issued to induce S&S to perfrom the inspections, and further that it contained only two conditions to S&S being paid: (a) that Flintlock would pay S&S out of "pending and future requisitions" of TAP (Exhibit "C"; ¶¶13, 40); and (b) that S&S would perform the sprinkler system inspections on the first phase of the Project (Exhibit "C"; ¶¶15, 16, 39) (Weiss Afdvt., ¶9).

23. The very next day, <u>before either condition was met</u>, Flintlock paid S&S $10,000.00 in furtherance of the February 24th Letter; the day after that, Flintlock paid S&S another $5,000.00 (Exhibit "D"). These payments were made as a sign of good faith, to further induce S&S to perform the sprinkler system inspections (Weiss Afdvt., ¶10).

24. Eleven (11) days subsequent thereto, Flintlock was forced to terminate TAP's subcontract (Exhibit "E"). During that time, Flintlock never received <u>any</u> requisitions from TAP nor did it make <u>any</u> payments to TAP (Exhibit "F") (Weiss Afdvt., ¶11).

25. Furthermore, S&S's allegation that it performed the sprinkler inspection for the sprinkler piping is entirely disingenuous (Exhibit "C"; ¶¶15, 16, 39). D&T Mechanical, as completion contractor for TAP, performed the sprinkler inspections and obtained the requisite certificates for the sprinkler systems, <u>not</u> S&S (Exhibit "G") (Weiss Afdvt., ¶12).

26. As such, Flintlock paid S&S $15,000.00 in response to the February 24th Letter, even though neither condition was met: TAP never submitted a requisition to Flintlock; and S&S never performed the sprinkler inspections (Weiss Afdvt., ¶13).

27. Flintlock asserts herein that it has completely performed its obligations under the February 24th Letter and bears no further liability to S&S (Weiss Afdvt., ¶14).

28. Flintlock further asserts that S&S breached the February 24th Letter by receiving

payment thereunder and refusing to perform the sprinkler system inspections as promised (Weiss Afdvt., ¶15).

29. S&S alleges in its Complaint under multiple theories that TAP and/or Flintlock owes S&S $70,775.00 for work completed pursuant to its subcontract with TAP (Exhibit "C")

30. As detailed herein, S&S failed to effect proper service of the Complaint pursuant to Bankruptcy Rule 7004(b)(3). Flintlock nevertheless forwarded the Complaint to its corporate counsel, Mr. John Mahoney. Flintlock believed that Mr. Mahoney would interpose an answer to the complaint since Flintlock a corporation could only appear in the proceeding through its counsel (Weiss Afdvt., ¶¶19, 21)

31. Flintlock eventually received S&S's Motion for the Entry of Judgment by Default.[3] Upon receipt, Flintlock immediately forwarded the motion papers to Mr. Mahoney. On January 23, 2006, <u>two days before the Motion's return date</u>, Mr. Mahoney advised Flintlock for the first time that: an answer had not been interposed; and the Motion's return date (Weiss Afdvt., ¶21)

32. On January 24, 2006, Flintlock discharged Mr. Mahoney, as its counsel, and retained Hollander & Strauss, LLP to represent its interests in the adversary proceeding (Weiss Afdvt., ¶23).

33. Affirmant, as Flintlock new counsel, called the Court in an attempt to adjourn the Motion via telephone, but the Court refused.

34. On January 25, 2006, Affirmant appeared in Court on behalf of Flintlock to oppose the S&S Motion. The Court however would not entertain Flintlock's opposition and

---

[3] S&S's Motion was delivered in the exact same manner as the Complaint was served.

7

advised counsel to bring the instant Motion.

35. A Default Judgment was thereafter entered against Flintlock on January 27, 2006.

## VACATING THE DEFAULT JUDGMENT UNDER F.R.CIV.P. 60(b)(1)

A. *F.R.Civ.P. §60(b)(1), Introduction.*

36. Rule 60(b)(1) of the Federal Rules of Civil Procedure allows a court to relieve a party from a default judgment based on excusable neglect. Excusable neglect is assessed based upon three factors: (1) whether the default by defendants was willful; (2) whether setting aside the default would prejudice the non-defaulting party; and (3) whether the defaulting party has presented a meritorious defense. It is Flintlock's alternative position that the default judgment should be vacated due to Flintlock's excusable neglect in failing to appear in this adversary proceeding (See Memo of Law).

B. *Flintlock's default was not willful*

37. Flintlock's failure to appear in this adversary proceeding was not willful. In order for a default to be considered willful there must be bad faith or at least something more then negligence, before a court rejects a claim of excusable neglect based on an attorney or a litigant's error (See Memo of Law).

38. Here, when the Complaint was received (although improperly served), Flintlock forwarded the process to its corporate counsel, Mr. John Mahoney (Weiss Afdvt., ¶¶19, 21). Flintlock was under the belief that Mr. Mahoney would interpose an Answer to the Complaint since Flintlock, a corporation could only appear in the proceeding through its counsel (Weiss Afdvt., ¶19). Unknown to Flintlock, an answer was never interposed upon S&S.

39.    Once apprised of its failure to appear, Flintlock immediately took steps to avoid entry of the Default Judgment. Flintlock retained new counsel who attempted to adjourn Debtor's motion in order to interpose opposition and or serve an answer (Weiss Afdvt., ¶¶22, 23). When the adjournment was not granted, Flintlock's new counsel appeared in Court the next day to oppose Debtor's application (Weiss Afdvt., ¶24). Flintlock's failure to appear simply did not rise to the level of willful default.

C.    <u>Setting aside the default will not prejudice the S&S</u>

40.    The initial burden of proving that undue prejudice will result from vacating the Default Judgment falls upon the non-moving party; that party must demonstrate either that the delay will result in the loss of evidence, create increased difficulties of discovery, or provide opportunities for fraud and collusion (See Memo of Law).

41.    Here, being that the Default Judgment was recently entered on January 27, 2006, it is doubtful that S&S would be able to satisfy this burden. Any delay caused by vacating the default will not result in the loss of evidence, create increased difficulties of discovery, or provide opportunities for fraud and collusion. S&S would be hard-pressed to point to any facts supporting the possibility that evidence has been lost, that discovery will be frustrated or that fraud will result. Given the relatively short delay in this case, mere speculation on these points is insufficient to show prejudice.

D.    <u>Flintlock's Meritorious Defense</u>

42.    Flintlock has a meritorious defense to S&S's claims. A defense is meritorious if it

9

is good at law so as to give the factfinder some determination to make at trial. However, the defense need not be ultimately persuasive at this stage (See Memo of Law).

I.     <u>Enforceability of a Guaranty</u>

43.     It is a fundamental rule that a guaranty is presided over by the Statute of Frauds, and as such, must be in writing and strictly construed as to the terms therein. The intention of the parties is to be ascertained and enforced if it be lawful and adequately expressed in the instrument; it may not be interpreted by implication or construction. (See Memo of Law).

44.     Moreover, a guaranty may limits its liability to the guarantor, either to time, amount or an express condition precedent, and no liability attaches unless such conditions are satisfied (See Memo of Law).

45.     Here, Flintlock and S&S agree that the February 24th Letter was a guaranty, from Flintlock to S&S, which contained two condition precedents to S&S being paid: (a) that Flintlock would pay S&S out of "pending and future requisitions" of TAP (Exhibit "C"; ¶¶13,40); and (b) that S&S would perform the sprinkler system inspections on the first phase of the Project (Exhibit "C"; ¶¶15, 16, 39).

46.     Neither of the two conditions under the February 24th Letter occurred: Flintlock never received a requisition from TAP; and S&S never performed the sprinkler inspections. (Weiss Afdvt., ¶13).

47.     That being said, Flintlock still paid S&S $15,000.00 in the two days following the issuance of the February 24th Letter, as a sign of good faith, to further induce S&S to perform the sprinkler system inspections (Exhibit "D") (Weiss Afdvt., ¶10).

48.     Flintlock asserts herein that it has completely performed its obligations under the

February 24th Letter and bears no further liability to S&S (Weiss Afdvt., ¶14).

49. Flintlock further asserts that S&S breached the February 24th Letter by receiving payment thereunder and refusing to perform the sprinkler system inspections as promised (Weiss Afdvt., ¶15).

50. Finally, the February 24th Letter cannot be interpreted as passing TAP's pre-existing liability to S&S onto Flintlock. The February 24th Letter is very clear when it guarantees to pay S&S for any additional owed to TAP arising from "pending and future requisitions." (Exhibit "B") (Weiss Afdvt., ¶8).

II.   <u>Fraud in the Inducement and F.R.Civ. P. §9(b)</u>

51. F.R.Civ.P. §9(b) states that, in pertinent part, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." (See Memo of Law).

52. The United States Court of Appeals for the Second Circuit has interpreted F.R.Civ.P §9(b) as requiring that the Complaint must: (a) Specify the fraudulent statements; (b) Identify the speaker; (c) Detail where and when the statements were made; and (d) Explain why the statements were fraudulent (See Memo of Law).

53. Plaintiffs must allege a strong inference of fraudulent intent either: (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud; or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness (See Memo of Law).

54. In its Verified Complaint, S&S alleges simply that the February 24th Letter "was false and constituted a misrepresentation of fact which was false and at all times known to Flintlock to be false" (Exhibit "C"; Para. 40) and that Flintlock issued it "for the purpose of inducing S&S to act upon and rely upon knowingly false statements." (Exhibit "C"; Para. 41). In response to such representations, S&S alleges that, "S&S justifiably relied upon the misrepresentations of Flintlock and was induced by Flintlock into providing the inspections for the work it had performed." (Exhibit "C"; Para. 42).

55. Flintlock controverts S&S's allegations and offers the documents that properly substantiate its claim. The February 24th Letter specifically stated that Flintlock's financial liability to S&S extended to "payments due to TAP from pending and future requisitions". (Weiss Afdvt., ¶8) (Exhibit "B"). TAP was terminated from the Project 11 days later (Weiss Afdvt., ¶11) (Exhibit "E"), and Flintlock neither received any requisitions from TAP nor paid any monies to TAP during that time (Exhibit "F") (Weiss Afdvt., ¶11).

56. In the two days following the issuance of the February 24th Letter, <u>before either condition was met</u>, Flintlock still paid S&S $15,000.00 as a sign of good faith, to further induce S&S to perform the sprinkler inspections (Exhibit "D") (Weiss Afdvt., ¶10).

57. Finally, a question of fact surrounds S&S's allegation that it performed the sprinkler system inspections in reliance to the February 24th Letter, as documents prove that D&T Mechanical, as completion contractor to TAP, performed that work (Exhibit "G") (Weiss Afdvt., ¶12).

58. Flintlock substantiates herein that it acted reasonably and honorably under the terms of the February 24th Letter. S&S, on the other hand, failed to satisfy the heightened

pleading requirements under F.R.Civ.P §9(b); its allegations of Fraudulent Inducement are based on conclusory and disingenuous statements that require further examination from the Court.

E.   *Conclusion*

59.   Flintlock has established the three factors, which comprise excusable neglect. Furthermore, because there is a preference for resolving disputes on the merits, any doubts to these factors should be resolved in favor of the defaulting party. Pursuant to F.R.Civ.P 60(b)(1) the Court should relieve Flintlock from the default judgment entered against it on January 27, 2006.

## STAYING THE EXECUTION OR ENFORCEMENT OF THE DEFAULT JUDGMENT

60.   Pursuant to Rule 62(b) of the Federal Rules of Civil Procedure a Court in its discretion and on such conditions for the security of the adverse party may stay the execution of or any proceedings to enforce a judgment pending the disposition of a motion made pursuant to Rule 60.

61.   Flintlock respectfully requests that the Court stay execution and enforcement of the default judgment pending resolution of the instant Rule 60 applications. Flintlock has established herein that the default judgment will likely be vacated on two grounds and that it will ultimately succeed on the merits of its defense.

62.   Furthermore, Flintlock is ready willing and able to post the necessary security to protect S&S's interest in its current judgment. Under these circumstances there is simply no prejudice to the S&S if the Court stays execution and enforcement of the judgment while this motion is pending.

63. Flintlock further requests leave to serve an Answer with Counterclaims and Cross-Claims annexed hereto as Exhibit "J."

**WHEREFORE**, it is respectfully requested that this Court: (a) reopen the case pursuant to 11 U.S.C. §350(b) and Local Bankruptcy Rule 5010-1; (b) grant Flintlock's interim relief; (c) grant a final Order vacating the default judgment allowing Flintlock to interpose its proposed Answer in this proceeding; and (d) for such further relief as this Court deems just and proper.

Dated: Great Neck, New York
January 26, 2007

HOLLANDER & STRAUSS, LLP
Attorneys for Defendant Flintlock

By: _____
Larry B. Hollander (LH9249)
40 Cutter Mill Road, Suite 203
Great Neck, New York 11021
(516) 498-1000

G:\1324-104\Motions Pleadings Stips\Affmtn-LBH.2.doc

14

-33-

Larry B. Hollander (LH9249)
Hollander & Strauss, LLP
40 Cutter Mill Road Suite 203
Great Neck, New York 11021
Flintlock Construction Services, LLC

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re:

S&S FIRE SUPPRESSION SYSTEMS, INC.,

                            Debtor.
-------------------------------------------------------X
S&S FIRE SUPPRESSION SYSTEMS, INC.,

                            Plaintiff,

                            -against-

TAP PLUMBING & HEATING, INC., AND
FLINTLOCK CONSTRUCTION SERVICES, LLC.,

                            Defendants.
-------------------------------------------------------X

Chapter 11
Case No.: 04-22183 (ASH)

Adv. Pro. No. 05-08645 (ASH)

**AFFIDAVIT IN SUPPORT OF
MOTION TO SET ASIDE
DEFAULT JUDGMENT AND
STAY EXECUTION AND
ENFORCEMENT**

State of Connecticut  )
                        )ss: GREENWICH
County of FAIRFIELD)

STEPHEN WEISS, JR., being duly sworn, deposes and says:

    1.    I am a Member of defendant Flintlock Construction Services, LLC ("Flintlock") and, as such, I have personal knowledge of the facts set forth herein.

    2.    I submit this Affidavit in support of Flintlock's Motion to vacate the Default Judgment entered against Flintlock by Debtor S&S Fire Suppression Systems, Inc. ("S&S"). This Affidavit is also submitted in support of Flintlock's request for an Order staying the execution and enforcement of the Default Judgment pending the resolution of the instant motion.

-34-

## BACKGROUND FACTS

3.  Flintlock, as design/build contractor, and the Purchase College Foundation Housing Corporation ("PCFHC") entered into a contract for the construction of thirteen new student residential buildings at the State University of New York College of Purchase, which consisted of two phases of construction (the "Project").

4.  As part of the Project, on or about September 9, 2002, Flintlock entered into an agreement with defendant TAP Plumbing & Heating, Inc. ("TAP") (Exhibit "A"). TAP, as subcontractor, agreed to provide Flintlock with certain labor, materials and/or equipment required for the Project's plumbing systems.

5.  TAP then entered into an agreement with S&S, as sub-subcontractor, under which S&S was to furnish and install certain labor and materials at the Project for TAP.

## THE FEBRUARY 24TH GUARANTY LETTER

6.  Upon information and belief, in or about January, 2003, TAP breached its subcontract with S&S by failing to remit certain payments to S&S.

7.  In order to complete the first phase of the Project, Flintlock needed S&S, as a licensed sprinkler suppression contractor, to perform certain sprinkler inspections therein.

8.  To induce S&S to perform said sprinkler inspections, Flintlock issued a letter to S&S, dated February 24, 2003, which stated that, "Flintlock agrees that payments due to TAP from pending and future requisitions will be paid to S&S until S&S has been fully paid according to the terms of its contract with TAP." (the "February 24th Letter") (Exhibit "B").

2

9. S&S acknowledges in its Verified Complaint that the February 24th Letter was issued to induce S&S to perform the inspections, and further that it contained only two conditions to S&S being paid: (a) that Flintlock would pay S&S out of "pending and future requisitions" of TAP (Exhibit "C"; ¶¶13, 40); and (b) that S&S would perform the sprinkler system inspections on the first phase of the Project (Exhibit "C"; ¶¶15, 16, 39).

10. The very next day, <u>before either condition was met</u>, Flintlock paid S&S $10,000.00 in furtherance of the February 24th Letter; the day after that, Flintlock paid S&S another $5,000.00 (Exhibit "D"). These payments were made as a sign of good faith, to further induce S&S to perform the sprinkler system inspections.

11. Eleven (11) days subsequent thereto, Flintlock was forced to terminate TAP's subcontract (Exhibit "E"). During that time, Flintlock never received <u>any</u> requisitions from TAP nor did it make <u>any</u> payments to TAP. (Exhibit "F").

12. Furthermore, S&S's allegation that it performed the sprinkler inspection for the sprinkler piping is entirely false (Exhibit "C"; ¶¶15, 16, 39). D&T Mechanical, as completion contractor for TAP, performed the sprinkler inspections and obtained the requisite certificates for the sprinkler systems, <u>not</u> S&S. (Exhibit "G").

13. As such, Flintlock paid S&S $15,000.00 in response to the February 24th Letter, even though neither condition was met: TAP never submitted a requisition to Flintlock; and S&S never performed the sprinkler inspections.

14. Flintlock asserts herein that it has completely performed its obligations under the February 24th Letter and bears no further liability to S&S.

15. Flintlock further asserts that S&S breached the February 24th Letter by receiving

3

payment thereunder and refusing to perform the sprinkler system inspections as promised.

## DEFECTIVE SERVICE TO FLINTLOCK

16. On or about August 25, 2005, S&S delivered its Summons and Verified Complaint upon Flintlock via first class mail, in an unmarked envelope, to Flintlock's old address, labeled as follows:

> **Flintlock Construction Services**
> **100 Putnam Green**
> **Greenwich, Connecticut 06830**

(Exhibit "H")

17. Upon information and belief the United States Post Office forwarded the S&S Complaint to Flintlock's current address, located at <u>77 Water Street, Greenwich, CT 06831</u>.

18. S&S utilized no other form of service besides first class mail for the Complaint.

19. Flintlock then forwarded the S&S Complaint to its corporate counsel, John Mahoney, Esq., with instructions to interpose an Answer on behalf of Flintlock and defend Flintlock's interests in this matter. Flintlock believed that Mr. Mahoney would do as he was instructed.

20. Flintlock eventually received S&S's Motion for the Entry of Judgment by Default.[1]

21. Flintlock immediately forwarded the Motion papers to Mr. Mahoney. On January 23, 2006, <u>two days before the Motion's return date</u>, Mr. Mahoney advised Flintlock for the first time that despite Flintlock's prior instructions to him, Mr. Mahoney had failed to either serve an Answer or serve any opposition to the Motion.

4

22. On January 24, 2006, Flintlock discharged Mr. Mahoney, as its counsel, and retained Hollander & Strauss, LLP to represent its interests in the adversary proceeding.

23. Larry Hollander, Esq., as Flintlock's new counsel, called the Court in an attempt to adjourn the Motion via telephone, but the court refused (Hollander Affirm., ¶33).

24. On January 25, 2006, Mr. Hollander appeared in Court on behalf of Flintlock to oppose the Default Motion. The Court would not entertain Flintlock's opposition (Hollander Affirm., ¶34).

25. A Default Judgment was thereafter entered against Flintlock on January 27, 2006 (Hollander Affirm., ¶35).

WHEREFORE, it is respectfully requested that this Court grant Flintlock's interim relief, and grant a final Order vacating the default judgment allowing Flintlock to interpose an answer in this proceeding and for such further relief as this Court deems just.

_____
Stephen Weiss, Jr.

Sworn to before me this
22ND day of January, 2007

_____
Notary Public

SANDRA C. DOMAN
NOTARY PUBLIC
#100917
My Commission Expires June 30, 2008

G:\1324-104\Motions Pleadings Stips\Vacate Def. Jdgmt- Weiss Afdvt..doc

---

[1] Debtor's motion was served in the exact same manner as the Complaint was served (Exhibit "I").

5

**Exhibit A**