WORKING PLANS, DESIGN, INSTALLATION, ACCEPTANCE TESTS, AND MAINTENANCE    13R—

## CONTRACTOR'S MATERIAL & TEST CERTIFICATE FOR ABOVEGROUND PIPING

Bldg. 6

**PROCEDURE**
Upon completion of work, inspection and tests shall be made by the contractor's representative and witnessed by an owner's representative. All defects shall be corrected and system left in service before contractor's personnel finally leave the job.
A certificate shall be filled out and signed by both representatives. Copies shall be prepared for approving authorities, owners, and contractor. It is understood the owner's representative's signature in no way prejudices any claim against contractor for faulty material, poor workmanship, or failure to comply with approving authority's requirements or local ordinances.

| PROPERTY NAME | S.U.N.Y. Phase II Housing | DATE | 2/21/03 |
|---|---|---|---|
| PROPERTY ADDRESS | 735 Anderson Hill Rd., Purchase, NY 10577 | | |

ACCEPTED BY APPROVING AUTHORITIES (NAMES)

ADDRESS

**PLANS**
- INSTALLATION CONFORMS TO ACCEPTED PLANS — ☒ YES ☐ NO
- EQUIPMENT USED IS APPROVED — ☒ YES ☐ NO
- IF NO, EXPLAIN DEVIATIONS

**INSTRUCTIONS**
- HAS PERSON IN CHARGE OF FIRE EQUIPMENT BEEN INSTRUCTED AS TO LOCATION OF CONTROL VALVES AND CARE AND MAINTENANCE OF THIS NEW EQUIPMENT? ☒ YES ☐ NO
- IF NO, EXPLAIN

HAVE COPIES OF THE FOLLOWING BEEN LEFT ON THE PREMISES:
1. SYSTEM COMPONENTS INSTRUCTIONS — ☒ YES ☐ NO
2. CARE AND MAINTENANCE INSTRUCTIONS — ☒ YES ☐ NO
3. NFPA 13A — ☒ YES ☐ NO

**LOCATION OF SYSTEM**: Supplies Buildings

### SPRINKLERS

| MAKE | MODEL | YEAR OF MANUFACTURE | ORIFICE SIZE | QUANTITY | TEMPERATURE RATING |
|---|---|---|---|---|---|
| Central | Optima | 2002 | | | 160° |
| Tyco | TY3651 | 2001 | | | 160° |

### PIPE AND FITTINGS
Type of Pipe: Schedule 40 black & Victaulic light wall
Type of Fittings: Schedule 40 malleable black & Victaulic fittings

### ALARM VALVE OR FLOW INDICATOR

| TYPE | ALARM DEVICE MAKE | MODEL | MAXIMUM TIME TO OPERATE THROUGH TEST CONNECTION MIN. | SEC. |
|---|---|---|---|---|
| SystemSensor | Tamper OSY2/Flow WFDT | | | |
| Potter | Tamper VSY2-SG | | | |

DRY VALVE

| MAKE | MODEL | SERIAL NO. | MAKE | MODEL | SERIAL NO. |
|---|---|---|---|---|---|
| N/A | | | | | |

### DRY PIPE OPERATING TEST

| | TIME TO TRIP THRU TEST CONNECTION MIN. | SEC. | WATER PRESSURE PSI | AIR PRESSURE PSI | TRIP POINT AIR PRESSURE PSI | TIME WATER REACHED TEST OUTLET MIN. | SEC. | ALARM OPERATED PROPERLY YES | NO |
|---|---|---|---|---|---|---|---|---|---|
| Without Q.O.D. | | | | | | | | | |
| With Q.O.D. | | | | | | | | | |

IF NO, EXPLAIN

*MEASURED FROM TIME INSPECTOR'S TEST CONNECTION IS OPENED.
85k (10-85)    PRINTED IN U.S.A.    (OVER)

Figure 2-1.2.1 Contractor's material and test certificate for aboveground piping.



Figure 6-1(b) (cont.).

**8-2 Acceptance Requirements.**

**8-2.1\* Flushing of Piping.** Underground mains and lead-in connections to system risers shall be completely flushed before connection is made to sprinkler piping. The flushing operation shall be continued for a sufficient time to ensure thorough cleaning. The minimum rate of flow shall be not less than:

(a) The hydraulically calculated water demand rate of the system including any hose requirements, or

(b) That flow necessary to provide a velocity of 10 ft per second (3 m/s), or

(c) The maximum flow rate available to the system under fire conditions.

Table 8-2.1  Flow Required to Produce a Velocity of 10 ft per second (3 m/s) in Pipes

| Pipe Size (in.) | Flow Rate (gpm) | Flow Rate (L/min) |
|---|---|---|
| 4 | 390 | 1476 |
| 6 | 880 | 3331 |
| 8 | 1560 | 5905 |
| 10 | 2440 | 9235 |
| 12 | 3520 | 13323 |

**8-2.2 Hydrostatic Tests.**

**8-2.2.1\*** All interior piping and attached appurtenance subjected to system working pressure shall be hydrostatically tested at 200 psi (13.8 bars) and shall maintain th pressure without loss for 2 hours. Loss shall be determine by a drop in gauge pressure or visual leakage.

*Exception No. 1: Portions of systems normally subjected to working pressures in excess of 150 psi (10.4 bars) shall be tested as described above at a pressure of 50 psi (3.5 bars) in excess of normal working pressure.*

*Exception No. 2: When cold weather will not permit testing with water, an interim air test may be conducted as described in 8-2..*

The test pressure shall be read from a gauge located at th low elevation point of the system or portion being tested.

**8-2.2.2 Additives.** Additives, corrosive chemicals such a sodium silicate or derivatives of sodium silicate, brine, o other chemicals shall not be used while hydrostatically tes ing systems or for stopping leaks.

**8-2.2.3** Piping between the exterior fire department connection and the check valve in the fire department inle pipe shall be hydrostatically tested in the same manner a the balance of the system.

**8-2.2.4** When hydrostatically testing deluge systems plugs shall be installed in fittings and replaced with ope sprinklers after the test is completed, or the operating ele ments of automatic sprinklers shall be removed after th test is completed.

SR-8    SPRINKLER SYSTEMS IN RESIDENTIAL OCCUPANCIES UP TO AND INCLUDING FOUR STORIES IN HEIGHT

(j) Any small enclosures in which no sprinklers are to be installed.

(k) Size of city main in street, pressure and whether dead-end or circulating; and, if dead-end, direction and distance to nearest circulating main, city main test results including elevation of test hydrant.

(l) Make, manufacturer, type, heat-response element, temperature rating, and nominal orifice size of sprinkler.

(m) Temperature rating and location of high-temperature sprinklers.

(n) Number of sprinklers on each riser, per floor.

(o) Kind and location of alarm bells.

(p) Type of pipe and fittings.

(q) Type of protection for nonmetallic pipe.

(r) Nominal pipe size with lengths shown to scale.

NOTE: Where typical branch lines prevail, it will be necessary to size only one line.

(s) Location and size of riser nipples.

(t) Type of fittings and joints and location of all welds and bends.

(u) Types and locations of hangers, sleeves, braces, and methods of securing sprinklers, where applicable.

(v) All control valves, check valves, drain pipes, and test connections.

(w) Underground pipe size, length, location, weight, material, point of connection to city main; the type of valves, meters, and valve pits; and the depth at which the top of the pipe is laid below grade.

(x) For hydraulically designed systems, the material to be included on the hydraulic data nameplate.

(y) Name and address of contractor.

1.2 Approval of Sprinkler Systems.

1.2.1 The installer shall perform all required acceptance tests (see 2-1.3), complete the Contractor's Material and Test Certificate(s) (see Figure 2-1.2.1), and forward the certificate(s) to the authority having jurisdiction, prior to asking for approval of the installation.

1.2.2 When the authority having jurisdiction desires to be present during the conducting of acceptance tests, the installer shall give advance notification of the time and date the testing will be performed.

1.3 Acceptance Tests.

1.3.1 Flushing of Underground Connections.

1.3.1.1 Underground mains and lead-in connections to system risers shall be flushed before connection is made to sprinkler piping, in order to remove foreign materials that may have entered the underground piping during the course of the installation. For all systems, the flushing operation shall be continued until water is clear.

2-1.3.1.2 Underground mains and lead-in connections shall be flushed at the hydraulically calculated water demand rate of the system.

2-1.3.1.3 To avoid property damage, provision shall be made for the disposal of water issuing from test outlets.

2-1.3.2* Hydrostatic pressure tests shall be provided in accordance with NFPA 13, Standard for the Installation of Sprinkler Systems.

Exception: Testing for leakage at 50 psi (3.4 bars) water pressure above the maximum system pressure shall be acceptable for systems having less than 20 sprinklers and no fire department connection.

2-2 Design and Installation.

2-2.1 Devices and Materials.

2-2.1.1 Only new sprinklers shall be employed in the installation of sprinkler systems. At least 3 spare sprinklers of each type, temperature rating, and orifice size used in the system shall be kept on the premises. Replacement sprinklers shall have the same operating characteristics as the sprinklers being replaced.

2-2.1.2 Only listed or approved devices and materials as indicated in this standard shall be used in sprinkler systems.

2-2.1.3 Sprinkler systems shall be designed for a maximum working pressure of 175 psi (12.1 bars).

Exception: Higher design pressures may be used when all system components are rated for pressures higher than 175 psi (12.1 bars).

2-3 Water Supply.

2-3.1 General Provisions. Every automatic sprinkler system shall have at least one automatic water supply. When stored water is used as the sole source of supply, the minimum quantity shall equal the water demand rate times 30 minutes. (See 2-5.1.3.)

2-3.2* Water Supply Sources. The following water supply sources are acceptable:

(a) A connection to a reliable water works system with or without a booster pump, as required.

(b) An elevated tank.

(c) A pressure tank installed in accordance with NFPA 13, Standard for the Installation of Sprinkler Systems, and NFPA 22, Standard for Water Tanks for Private Fire Protection.

(d) A stored water source with an automatically operated pump, installed in accordance with NFPA 20, Standard for the Installation of Centrifugal Fire Pumps.

**Exhibit H**

Flintlock Construction Services
100 Putnam Green
Greenwich, Connecticut 06830

Exhibit I   -90-



U.S. POSTAGE 01.59
H METER 550683
SPRING VALLEY NY JAN 11 '06

KURTZMAN MATERA GUROCK SCUDERI & KARBEN, LLP
ATTORNEYS AT LAW
2 PERLMAN DRIVE
SPRING VALLEY, NEW YORK 10977

**TO:**
Flintlock Construction Services
100 Putnam Green
Greenwich, CT 06830

Exhibit J

Larry B. Hollander (LH9249)
Hollander & Strauss, LLP
40 Cutter Mill Road Suite 203
Great Neck, New York 11021
Flintlock Construction Services, LLC

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:

S&S FIRE SUPPRESSION SYSTEMS, INC.,

Debtor.
------------------------------------------------------------X
S&S FIRE SUPPRESSION SYSTEMS, INC.,

Plaintiff,

-against-

TAP PLUMBING & HEATING, INC., AND
FLINTLOCK CONSTRUCTION SERVICES, LLC.

Defendants.
------------------------------------------------------------X

Chapter 11
Case No.: 04-22183 (ASH)

Adv. Pro. No. 05-08645 (ASH)

**ANSWER WITH COUNTER-CLAIMS AND CROSS-CLAIMS**

Defendant Flintlock Construction Services, LLC ("Flintlock"), by and through its attorneys, Hollander & Strauss, LLP, as and for their Answer to the Complaint herein, hereby state as follows:

1. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraphs "1", "2", "3", "4", "6", "7", "8", "9", "10", "11", "17", "19", "21", "23", "29", "30", "31", "32", "36", "44", "45", "46", "48", "49" and "50" of the Verified Complaint.

2. Denies the allegations contained in Paragraph "5," except begs leave for the Court to refer to the 11 U.S.C. §101(41) for its true terms, scope and legal effect.

-93-

3. Denies the allegations contained in Paragraph "12" and "13," except begs leave to the Court to refer to the February 24, 2003 letter (the "February 24th Letter") for its true terms, scope and legal effect.

4. Denies the allegations contained in Paragraph "25," except begs leave for the Court to refer to the 28 U.S.C. §1334 and 11 U.S.C. §§541 and 542(b) for its true terms, scope and legal effect.

5. Denies the allegations contained in Paragraph "26," except begs leave for the Court to refer to the 28 U.S.C. §157 for its true terms, scope and legal effect.

6. Denies the allegations contained in Paragraph "27," except begs leave for the Court to refer to the 28 U.S.C. §1409(a) for its true terms, scope and legal effect.

7. Denies the allegations contained in Paragraph "14," "15," "16," "18," "20," "22," "24," "34," "35, "37," "39", "40", "41", "42", "52," "53" and "54" of the Verified Complaint.

8. With respect to paragraph "28", "33," "38," "43," "47," "51" of the Verified Complaint, Flintlock repeats and realleges each and every response of the Verified Complaint.

9. Denies each and every allegation of the Complaint not specifically admitted, denied or otherwise specifically responded to herein.

### AS AND FOR A FIRST AFFIRMATIVE DEFENSE
### (LACK OF IN PERSONAM JURISDICTION)

10. Pursuant to the 11 U.S.C. §7004(b)(3), service upon a domestic corporation must be made via first class mail and addressed to the attention of an officer, a managing agent or a general partner, or to any other agent authorized by appointment or by law to receive service of process.

2

11. Debtor-Plaintiff S&S Fire Suppression Systems, Inc ("S&S") delivered the Verified Complaint to Flintlock via first class mail to 100 Putnam Green, Greenwich Connecticut 06830, its *previous* office location, without addressing the process to the attention of any officer, managing agent or general agent of Flintlock.

12. S&S failed to effectuate service over Flintlock in the instant action.

13. Based on the foregoing, this Court does not maintain in personam jurisdiction over Flintlock in the instant action.

14. The Verified Complaint should be dismissed.

### AS AND FOR A SECOND AFFIRMATIVE DEFENSE (FAILURE TO STATE A CLAIM UPON WHICH RELIEF IS GRANTED)

15. Flintlock, as design/build contractor, and the Purchase College Foundation Housing Corporation ("PCFHC") entered into a contract for the construction of thirteen new student residential buildings at the State University of New York College of Purchase, which consisted of two phases of construction (the "Project").

16. In furtherance of the Project, Flintlock entered into an agreement with defendant TAP Plumbing & Heating, Inc. ("TAP"). TAP, as subcontractor, agreed to provide Flintlock with certain labor, materials and/or equipment required for the Project's plumbing systems.

17. TAP then entered into an agreement with S&S, as sub-subcontractor, under which S&S was to furnish and install certain labor and materials at the Project for TAP.

18. Upon information and belief, in or about January, 2003, TAP breached its subcontract with S&S by failing to remit certain payments to S&S.

19. In order to complete the first phase of the Project, Flintlock needed S&S, as a

3

licensed sprinkler suppression contractor, to perform certain sprinkler inspections therein.

20. To induce S&S to perform said sprinkler inspections, Flintlock issued a guaranty to S&S, dated February 24, 2003 (the "February 24th Letter"), which contained two condition precedents: (a) that S&S would perform the sprinkler system inspections on the first phase of the Project; and (b) that Flintlock would pay S&S out of "pending and future requisitions" of TAP.

21. Eleven (11) days subsequent thereto, Flintlock was forced to terminate TAP's subcontract. During that time, Flintlock never received any requisitions from TAP nor did it make any payments to TAP.

22. S&S did not perform the sprinkler system inspections nor did it obtain the requisite certificates for the sprinkler systems.

23. As such, neither condition precedent occurred that would trigger Flintlock's obligations under the February 24th Letter.

24. Based on the foregoing, Flintlock bears no liability to S&S under the February 24th Letter.

25. Pursuant to F.R.Civ.P. §12(b)(6), S&S fails to state a claim upon which relief can be granted.

26. The Verified Complaint should be dismissed.

### AS AND FOR A THIRD AFFIRMATIVE DEFENSE (FAILURE TO PLEAD FRAUD WITH PARTICULARITY UNDER F.R.Civ.P. §9(b))

27. Flintlock repeats and realleges each and every allegation contained in Paragraphs "1" through "26" of this Answer with the same force and effect as if fully set forth at length herein.

4

28.  S&S's fourth cause of action against Flintlock is based upon Fraudulent Inducement.

29.  Pursuant to F.R.Civ.P. CPLR §9(b), allegations of fraud and/or mistake require a heightened level of particularity in pleadings by plaintiffs.

30.  The fourth cause of action within the Verified Complaint, for Fraudulent Inducement, fails to satisfy the heightened level of particularity pursuant to F.R.Civ.P. §9(b).

31.  Based on the foregoing, the fourth cause of action within the Verified Complaint should be dismissed.

### AS AND FOR A FOURTH AFFIRMATIVE DEFENSE (NO PRIVITY OF CONTRACT)

32.  Flintlock repeats and realleges each and every allegation contained in Paragraphs "1" through "31" of this Answer with the same force and effect as if fully set forth at length herein.

33.  There is no privity of contract as between Flintlock and S&S.

34.  S&S's claims as against Flintlock are barred by the Statute of Frauds.

35.  The Verified Complaint fails to state a claim upon which relief may be granted as against Flintlock.

36.  Based on the foregoing, the Verified Complaint should be dismissed.

### AS AND FOR A FIFTH AFFIRMATIVE DEFENSE AND A FIRST COUNTERCLAIM OVER AND AGAINST S&S

37.  Flintlock repeats and realleges each and every allegation contained in Paragraphs "1" through "36" of this Answer with the same force and effect as if fully set forth at length herein.

5

38. In response to the failure of S&S to perform as agreed under the February 24th Letter, Flintlock contracted with, and made payments to, D&T Mechanical to perform the sprinkler system inspections and obtain the requisite certificates for the sprinkler systems.

39. Based on the foregoing, Flintlock has been damaged in a sum to be determined at trial, but not less than $15,000.00.

### AS AND FOR A SIXTH AFFIRMATIVE DEFENSE AND A FIRST CROSS-CLAIM OVER AND AGAINST CO-DEFENDANT TAP

40. Flintlock repeats and realleges each and every allegation contained in Paragraphs "1" through "39" of this Answer with the same force and effect as if fully set forth at length herein.

41. Upon information and belief, that if and in the event S&S sustained the injuries and damages complained of, such injuries and damages were caused entirely by reason of the wrongful and culpable conduct and/or breach of contract of TAP, there being no active or primary wrongdoing on the part of Flintlock contributing thereto.

42. Based on the foregoing, Flintlock is entitled to full common law and/or contractual indemnity from, and to judgment over and TAP, for all of any verdict or judgment which S&S may recover against Flintlock.

### AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE AND A SECOND CROSS-CLAIM OVER AND AGAINST CO-DEFENDANT TAP

43. Flintlock repeats and realleges each and every allegation contained in Paragraphs "1" through "42" of this Answer with the same force and effect as if fully set forth at length herein.

44. Upon information and belief, that if and in the event S&S sustained the injuries

6

and damages complained of, such injuries and damages were caused entirely by reason of the wrongful and culpable conduct and/or breach of contract of TAP.

45. Based on the foregoing, if and in the event that any judgment or verdict is recovered against Flintlock, then Flintlock is entitled to contribution from, and to judgment over and against TAP.

**WHEREFORE,** defendant Flintlock Construction Services, LLC demands judgment dismissing the Complaint and awarding judgment on its Counterclaims against plaintiff S&S Fire Suppression Systems, Inc. and on its cross-claims against defendant TAP Plumbing & Heating, Inc., as follows:

(a) On the First Counterclaims, in the amount of $15,000.00 plus interest thereon; and

(b) On the first and Second Cross-claims, if and in the event that any judgment or verdict is recovered against Flintlock, then Flintlock is entitled to contribution from, and to judgment over and against TAP; and

(c) an award for costs and disbursements of this action, together as such other and further relief as to the Court may seem just and proper.

Dated: Great Neck, New York
January 25, 2007

           **HOLLANDER & STRAUSS, LLP**
           Attorneys for Defendant
           Flintlock Construction Services, LLC

           By:_____
            Larry B. Hollander (LH9249)
           40 Cutter Mill Road, Suite 203
           Great Neck, New York 11021
           (516) 498-1000

7