TO:    **KURTZMAN, MATERA, GUROCK,**
       **SCUDERI & KARBEN, LLP**
       Attorney for Debtor-Plaintiff
       S&S Fire Suppression Systems, Inc.
       2 Perlman Drive
       Spring Valley, New York  10977


       **ROBERT J. MCGOEY, ESQ.**
       Attorney for Defendant
       Tap Plumbing & Heating, Inc.
       271 North Avenue, Suite 1012
       New Rochelle, New York 10801

G:\1324-104\Motions Pleadings Stips\Answer.doc

8

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NASSAU     )

**IRA EVERETT**, being duly sworn, deposes and says:

I am not a party to the action, am over 18 years of age and reside in Queens County, New York. On the 26th day of January, 2007, I served the within **AMENDED NOTICE OF MOTION and AFFIRMATION TO: (A) REOPEN BANKRUPTCY CASE; and (B) SET ASIDE DEFAULT JUDGMENT AND STAY ENFORCEMENT AND EXECUTION WITH SUPPORTING PAPERS** upon:

> **KURTZMAN, MATERA, GUROCK, SCUDERI & KARBEN, LLP**
> Attorney for Debtor-Plaintiff
> S&S Fire Supression Systems, Inc.
> 2 Perlman Drive
> Spring Valley, New York  10977
>
> **ROBERT J. MCGOEY, ESQ.**
> Attorney for Defendant
> Tap Plumbing & Heating, Inc.
> 271 North Avenue, Suite 1012
> New Rochelle, New York  10801

by depositing a true copy thereof enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within the State of New York, addressed to the persons at the last known addresses as set forth above.

_____
**IRA EVERETT**

Sworn to before me this
26th day of January, 2007

_____
MICHAEL R. STRAUSS
Notary Public, State of New York
No. 02ST4836127
Qualified in New York County
Commission Expires July 31, 2009

Larry B. Hollander (LH9249)
Hollander & Strauss, LLP
40 Cutter Mill Road Suite 203
Great Neck, New York 11021
Flintlock Construction Services, LLC

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:

S&S FIRE SUPPRESSION SYSTEMS, INC.,                  Chapter 11
                                                      Case No.: 04-22183 (ASH)

                    Debtor.
-----------------------------------------------------------X
S&S FIRE SUPPRESSION SYSTEMS, INC.,

                    Plaintiff,

                    -against-                          Adv. Pro. No. 05-08645 (ASH)

TAP PLUMBING & HEATING, INC., AND
FLINTLOCK CONSTRUCTION SERVICES, LLC.,

                    Defendants.
-----------------------------------------------------------X


**FLINTLOCK CONSTRUCTION SERVICES, LLC.'S MEMORANDUM OF
LAW IN SUPPORT OF MOTION TO VACATE DEFAULT JUDGMENT
AND STAY EXECTUTION AND ENFORCEMENT**


**HOLLANDER & STRAUSS, LLP**

**40 CUTTER MILL ROAD - SUITE 203
GREAT NECK, N.Y. 11021
(516) 498-1000**

**119 LITTELTON ROAD
PARSIPPANY, NEW JERSEY 07054
(201) 944-7445**

## PRELIMINARY STATEMENT

Flintlock Construction Services, LLC ("Flintlock") submits this Memorandum of Law in support of its Motion for an Order:

      (a)     setting aside the default judgment entered against Flintlock on January 27, 2006, pursuant to F.R.Civ.P. 60(b)(4) or alternatively F.R.Civ.P. 60(b)(1); and

      (b)     staying all proceedings to enforce the default judgment while this motion is pending pursuant to F.R.Civ.P. 62(b).[1]

## STATEMENT OF FACTS

Flintlock's Motion to set aside the Default Judgment rests upon the facts stated in the accompanying Affidavit of Stephen Weiss Jr. sworn to on January 22, 2007, and the Affirmation of Larry B. Hollander dated January 25, 2007. Accordingly, Flintlock respectfully refers this Court to Mr. Weiss' Affidavit and Mr. Hollander's Affirmation for the facts relevant to its application.

---

[1] Bankruptcy Rule 9024 incorporates by reference Rule 60(b) of the Federal Rules of Civil Procedure. Bankruptcy Rules 7062 incorporates by reference Rule 62 of the Federal Rules of Civil Procedure.

1

## ARGUMENT

## POINT I

## VACATING THE DEFAULT JUDGMENT UNDER
## F.R.CIV.P. §§7004(b)(3) AND 60(b)(4).

A.    **Vacating a Default Judgment, Generally.**

Rule 60(b)(4) of the Federal Rules of Civil Procedure allows a court to relieve a party

from a final judgment when that judgment is void. *Satterfield v. Pfizer, Inc.*, 2005 U.S. Dist.

Lexis 14923 (S.D.N.Y. 2005). In pertinent part Rule 60(b)(4) states:

> "On motion and upon such terms as are just, the court may relieve
> a party or party's legal representative from a final judgment, order,
> or proceeding for the following reasons: . . .(4) the judgment is
> void; . . ." Fed. R. Civ. P. 60(b)(4)

Under Rule 60(b)(4) a deferential standard of review is not appropriate because if the

underlying judgment is void, it is a per se abuse of discretion for a court to deny a movant's

motion to vacate the judgment under Rule 60(b)(4). *Central Vermont Public Service Corp. v.

Herbert*, 341 F3d 186, 189 (2nd Cir. 2003).

B.    **Improper Service under the Bankruptcy Code, Application Herein.**

The instant Default Judgment must be held void as a matter of law based on the fact that

S&S failed to effect proper service of process pursuant to Bankruptcy Rule 7004(b)(3).

Bankruptcy Rule 7004(b)(3) requires that service by first class mail on a domestic corporation be

addressed to "the attention of an officer, a managing agent or a general partner, or to any other

agent authorized by appointment or by law" to receive service of process. Fed. R. Bankr. P.

7004(b)(3); *In re: Cruisephone Inc.*, 278 B.R. 325 (Bankr. E.D.N.Y 2002). This requires that

2

service of process be addressed to an appropriate individual at the corporation by name or by title. *In re: Lenox Healthcare, Inc.* 2005 Bankr. Lexis 90 (Bankr. D. Del. 2005); *In re: Sun Healthcare Group, Inc.* 2004 Bankr. Lexis 572 (Bankr. D. Del. 2004).

Because "nationwide service of process by first class mail is a rare privilege which should not be abused or taken lightly," Courts have required strict compliance with Rule 7004(b)(3). *In re Villar*, 317 B.R. 88, 93 (B.A.P. 9th Cir. 2004); *In re: Lenox Healthcare, Inc.* supra. Courts vary on the specificity required: some courts require that it be addressed to a person by name, while others require that it be addressed to that person's title. Id. However, Courts universally agree that merely mailing the Complaint to the corporation's post office box is insufficient. Id.

Here it is undisputed that S&S delivered the Complaint to Flintlock by first class mail to 100 Putnam Green, Greenwich Connecticut 06830, its *previous* office location, without addressing the process to the attention of any officer, managing agent or general agent of Flintlock. (Exhibit "H") (Weiss Afdvt., ¶16)

Failure to address the service of process to the attention of an officer or agent of Flintlock per se violates the statutory requirements of Bankruptcy Rule 7004(b)(3). *In re Golden Books Family Entertainment, Inc.*, 269 B.R. 300, 305 (Bankr. D. Del. 2001); *In re: Sun Healthcare Group, Inc.*, supra. Notice *must* comply with the literal requirements of Bankruptcy Rule 7004(b)(3). Id.

Consequently, S&S's service of process did not meet the requirements of Bankruptcy Rule 7004(b)(3). A Default Judgment entered when there has been no proper service of process is void as a matter of law. *Satterfield v. Pfizer, Inc.* supra. Accordingly, the Default Judgment against Flintlock should be vacated.

3

**C.**    **Flintlock's Receipt of the Complaint did not Remedy the Defective Service.**

The fact that Flintlock eventually received S&S's Complaint does not provide S&S with the argument that service of process was effectuated simply based on adequate and timely notice of the adversary proceeding to Flintlock.  Notice can not by itself validate an otherwise defective service of process.  *In re: Cruisephone Inc.*, 278 B.R. 325, 334 (Bankr. E.D.N.Y 2002).

Service of process is a separate prerequisite to obtaining jurisdiction over a party, one that is independent of due process considerations.  *In re: Cruisephone Inc.*, supra; citing *Grand Entertainment Group Ltd. V. Star Media Sales, Inc.*, 988 F.2d 476, 492 (3rd Cir. 1993); *Mid-Continent Wood Prod., Inc. v. Harris*, 936 F.2d 297, 300-01 (7th Cir. 1991); *Echevarria-Gonzalez v. Gonzalez-Chapel*, 849 F.2d 24, 28 (1st Cir. 1988).  A Bankruptcy Court's power to adjudicate the rights and liabilities of a defendant is dependent not only on compliance with due process, but also on compliance with the technicalities of Bankruptcy Rule 7004. *In re: Cruisephone Inc.*, supra. (Emphasis added).  In the instant adversary proceeding, service of process on Flintlock was not made in accordance with Bankruptcy Rule 7004(b)(3) and jurisdiction over Flintlock was never obtained.  As a result, the default judgment is still void and must be vacated.

4

POINT II

<u>**VACATING THE DEFAULT JUDGMENT UNDER F.R.CIV.P. §60(b)(1)**</u>

**A.**    <u>**F.R.CIV.P §60(b)(1), Introduction.**</u>

Rule 60(b)(1) of the Federal Rules of Civil Procedure allows a Court to relieve a party from a default judgment based on excusable neglect. In pertinent part Rule 60(b)(1) provides:

> "On motion and upon such terms as are just, the court may relieve a party or party's legal representative from a final judgment, order, or proceeding for the following reasons: . . .(1) mistake, inadvertence, surprise, or excusable neglect; . . ." Fed. R. Civ. P. 60(b)(1)

In the Default Judgment context, courts examine three criteria to determine whether to vacate the judgment: (1) whether the default was willful; (2) the level of prejudice that may occur to the non-defaulting party if relief is granted; and (3) whether the defendant has a meritorious defense. *Pecarsky v. Galaxiworld.com Limited*, 249 F.3d 167, 171 (2d Cir. 2001); *American Alliance Insurance Co. Ltd. V Eagle Insurance Co.*, 92 F.3d 57, 59 (2d Cir. 1996); *Malletier v. Barami Enterprises, Inc.*, 2006 U.S. Dist. Lexis 5331 (S.D.N.Y. 2006); *In re: Suprema Specialties, Inc.*, 330 B.R. 40, 51-2 (S.D.N.Y. 2005). It is Flintlock's position that the Default Judgment should be vacated due to Flintlock's excusable neglect in failing to appear in this adversary proceeding.

**B.**    <u>**Flintlock's Default was not Willful.**</u>

Flintlock's failure to appear in this adversary proceeding was not willful. The Second Circuit has interpreted "willfulness" as being more than merely negligent or careless. *Malletier*

5

*v. Barami Enterprises, Inc.*, supra, citing *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). The Courts are to look for bad faith, or at least something more than mere negligence before rejecting a claim of excusable neglect based on an attorney's or a litigant's error. *American Alliance*, 92 F.3d 57, 60.

Here, there is no bad faith or gross negligence. When the Complaint was improperly served as noted herein, Flintlock forwarded the Complaint to its corporate counsel, Mr. John Mahoney. Flintlock's principal believed that Mr. Mahoney would interpose an Answer to the Complaint, since Flintlock is a corporation and could only appear in the proceeding through counsel. Unknown to Flintlock's principal, an answer was not interposed. (Weiss Afdvt., ¶¶19, 21).

Once apprised of its failure to appear, Flintlock immediately took steps to avoid entry of the Default Judgment. Flintlock retained new counsel who attempted to adjourn the S&S Motion so that it may interpose opposition and/or serve an Answer to S&S's Complaint. (Weiss Afdvt., ¶22). When the adjournment was not granted, Flintlock's new counsel appeared in Court to oppose S&S's Application for a Default Judgment (Hollander Affirm., ¶¶33, 34). Based on these circumstances it is evident that Flintlock's failure to appear did not rise to the level of a willful default.

**C.**     <u>**Setting Aside the Default will not Prejudice S&S.**</u>

The initial burden of proving that undue prejudice will result from vacating the Default Judgment falls upon the non-moving party. That party must demonstrate that the delay will somehow result in either the loss of evidence, create increased difficulties of discovery, or

6

provide opportunities for fraud and collusion. *In re: Suprema Specialties, Inc.*, 330 B.R. 40, 53 (S.D.N.Y. 2005); citing *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983).

Here, being that the Default Judgment was recently entered on January 27, 2006 (Hollander Affirm., ¶¶35), it is doubtful that S&S would be able to satisfy its burden. Any delay caused by vacating the default will not result in the loss of evidence, create increased difficulties of discovery or provide opportunities for fraud and collusion. S&S would be hard-pressed to point to any facts supporting the possibility that evidence has been lost, that discovery will be frustrated or that fraud will result. Given the relatively short delay in this case, mere speculation on these points is insufficient to show prejudice.

**D.    Flintlock's Meritorious Defense.**

    *1.    Introduction.*

Flintlock maintains several meritorious defenses to S&S's claims. "A defense is meritorious if it is good at law so as to give the factfinder some determination to make at trial." *Malletier v. Barami Enterprises, Inc.*, supra, citing *American Alliance*, 92 F.3d at 61. "However, the defense need not be ultimately persuasive at this stage." *American Alliance*, 92 F.3d at 61.

    *2.    Enforceability of a Guaranty.*

It is a fundamental rule that a guaranty must be in writing and must be strictly construed as to the terms therein. "Under the Statute of Frauds...every agreement to answer for the debt of another person is void unless it, or some note or memorandum thereof be in writing and subscribed by the party to be charged therewith." *Stand. Oil. Co., v. Koch,* 260 N.Y. 150, 154,

7

183 N.E. 278, 279 (1932). "...the writing must contain all the substantial and material terms of the contract, and must show on its face what the whole agreement, is, so far as the same is executory and remains to be performed and rests upon unfulfilled promises." Id. "The intention of the parties is to be ascertained and enforced if it be lawful and adequately expressed in the instrument...[t]he contract of the [guarantor], however, when determined, is not to be extended by implication or construction." *Amer. Rattan & Reed Manu. Co., Inc. v. Cone*, 198 A.D. 843, 847, 190 N.Y.S. 782 (1921).

Moreover, it is long-established that where a guarantor limits its liability, either to time, amount or an express condition precedent, that no liability attaches unless such conditions are satisfied. *Evansville Nat. Bank v. Kaufmann* 93 N.Y. 273, 279 (1883).

Here, Flintlock and S&S agree that the February 24th Letter was a guaranty, from Flintlock to S&S, which contained two condition precedents to S&S being paid: (a) that Flintlock would pay S&S out of "pending and future requisitions" of TAP (Exhibit "C"; ¶13, 40); and (b) that S&S would perform the sprinkler system inspections on the first phase of the Project (Exhibit "C"; ¶¶15, 16, 39) (Weiss Afdvt., ¶9).

Neither of the two conditions under the February 24th Letter occurred: Flintlock never received a requisition from TAP; and S&S never performed the sprinkler system inspections (Weiss Afdvt., ¶13). That being said, Flintlock still paid S&S $15,000.00 in the two days following the issuance of the February 24th Letter, as a sign of good faith, to further induce S&S to perform the sprinkler system inspections (Exhibit "D") (Weiss Afdvt., ¶10).

Flintlock asserts herein that it has completely performed its obligations under the February 24th Letter and bears no further liability to S&S (Weiss Afdvt., ¶14). Flintlock further

8

asserts that S&S breached the February 24th Letter by receiving payment thereunder and refusing to perform the sprinkler system inspections as promised (Weiss Afdvt., ¶15). Contrary to the allegations of S&S, D&T Mechanical, completion contractor for TAP, performed the sprinkler inspections and obtained the requisite certificates for the sprinkler systems, not S&S (Exhibit "G") (Weiss Afdvt., ¶12).

Finally, the February 24th Letter cannot be interpreted as passing TAP's pre-existing liability to S&S onto Flintlock. The February 24th Letter is very clear when it guarantees to pay S&S for any additional owed to TAP arising from "pending and future requisitions." (Exhibit "B") (Weiss Afdvt., ¶8).

3.    *Fraud in the Inducement and F.R.Civ. P. §9(b).*

F.R.Civ.P. §9(b) states that, in pertinent part, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

The United States Court of Appeals for the Second Circuit has interpreted F.R.Civ.P §9(b) as requiring that the Complaint must;

(a) Specify the fraudulent statements;

(b) Identify the speaker;

(c) Detail where and when the statements were made; and

(d) Explain why the statements were fraudulent.

*JPMorgan Chase Sec. Litig.,* 363 F. Supp. 2d 595, 615 (S.D.N.Y. 2005).

"[T]he Second Circuit has admonished that a Court must not mistake the relaxation of Rule

9

9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations." *Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 52 (2d Cir. 1995). Instead, plaintiffs must allege a strong inference of fraudulent intent either: (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud; or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. *JP Morgan Chase Sec. Litig.,* 363 F. Supp. 2d at 615.; *Chill v. GE,* 101 F. 3d 263, 276 (2d Cir. 1996); *Acito,* 47 F. 3d at 52.

In the instant matter, S&S failed to satisfy the heightened pleading requirements under F.R.Civ.P §9(b); its allegations of Fraudulent Inducement are based on conclusory and disingenuous statements that undoubtedly require further examination from the Court.

In its Verified Complaint, S&S alleges simply that the February 24th Letter "was false and constituted a misrepresentation of fact which was false and at all times known to Flintlock to be false" (Exhibit "C"; Para. 40) and that Flintlock issued it "for the purpose of inducing S&S to act upon and rely upon knowingly false statements." (Exhibit "C"; Para. 41). In response to such representations, S&S alleges that, "S&S justifiably relied upon the misrepresentations of Flintlock and was induced by Flintlock into providing the inspections for the work it had performed." (Exhibit "C"; Para. 42).

Flintlock controverts S&S's allegations and offers the documents that properly substantiate its claim. The February 24th Letter specifically stated that Flintlock's financial liability to S&S extended to "payments due to TAP from pending and future requisitions." (Exhibit "B") (Weiss Afdvt., ¶8). TAP was terminated from the Project 11 days later (Exhibit "E"), and, during that time, Flintlock never received <u>any</u> requisitions from TAP nor did it make any payments to TAP

10

(Exhibit "F") (Weiss Afdvt., ¶11).

In the two days following the issuance of the February 24th Letter, <u>before either condition was met</u>, Flintlock still paid S&S $15,000.00 as a sign of good faith, to further induce S&S to perform the sprinkler inspections (Exhibit "D") (Weiss Afdvt., ¶10). Finally, a question of fact surrounds S&S's allegation that it performed the sprinkler system inspections in reliance to the February 24th Letter, as documents prove that D&T Mechanical, as completion contractor to TAP, performed that work (Exhibit "G") (Weiss Afdvt., ¶12).

Flintlock substantiates herein that it acted reasonably and honorably under the terms of the February 24th Letter. S&S, on the other hand, failed to satisfy the heightened pleading requirements under F.R.Civ.P §9(b); its allegations of Fraudulent Inducement are based on conclusory and disingenuous statements that require further examination from the Court.


**E.     <u>Conclusion.</u>**

As demonstrated, Flintlock has established the three factors which comprise excusable neglect.

Flintlock has shown that its failure to appear in this adversary proceeding was not willful. When Flintlock received the improperly-served papers, it immediately forwarded such to its corporate counsel, Mr. John Mahoney. (Weiss Afdvt., ¶¶19, 21) Once apprised of its failure to appear, Flintlock immediately took steps to avoid entry of the default judgment (Weiss Afdvt., ¶¶21-24). Flintlock's failure to appear did not rise to the level of a willful default.

The burden of proving that undue prejudice would result from vacating the Default Judgment falls upon S&S. Here, we believe that S&S would be hard-pressed to satisfy such a

burden.

Flintlock has further shown that it maintains several meritorious defenses to Plaintiff's allegation. First, in response to S&S's claim for Breach of Contract: the February 24th Letter, the central document to S&S's claim, is deemed by the Law to be a guaranty, and must be read strictissimi juris:  the condition precedent therein must be literally read and strictly construed. Under the condition, Flintlock is freed from any liability to S&S, and nowhere thereunder does Flintlock accept the pre-existing liabilities of TAP to S&S.

Second, S&S has a duty under F.R.Civ.P §9(b) to plead its Fraudulent Inducement claim with a heightened level of particularity: Plaintiff had a duty to substantiate where, when and why Flintlock made fraudulent statements.  As herein demonstrated, the conclusory allegations made by Plaintiff in its pleadings do not satisfy this requirement.

In conclusion, Flintlock has satisfied the elements pursuant to F.R.Civ.P 60(b)(1) that provide the Court with the authority to relieve Flintlock of the Default Judgment entered against it.  Flintlock respectfully requests that the Court act under this authority to allow this matter to be heard on it merits.

12