Michael R. Strauss (MS7780)
Hollander & Strauss, LLP
40 Cutter Mill Road Suite 203
Great Neck, New York 11021
Attorneys Flintlock Construction Services, LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
S&S FIRE SUPPRESSION SYSTEMS, INC.,

     Appellee,     07 Civ. 2907 (CLB)

  -against-

TAP PLUMBING & HEATING, INC., AND
FLINTLOCK CONSTRUCTION SERVICES, LLC.,

     Appellant.
----------------------------------------------------------X

## BRIEF OF APPELLANT
## FLINTLOCK CONSTRUCTION SERVICES, LLC

TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...............................1

STATEMENT OF FACTS.........................................1
    Background .....................................................1
    Service of Process and Procedural
    History.............................................................3

ARGUMENT

    POINT I

    THE COURT BELOW COMMITED
    AN ERROR OF LAW AND/OR
    ABUSED ITS DISCRETION BY
    FAILING TO RECOGNIZE THE
    UNDERLYING JUDGMENT WS
    VOID DUE TO INSUFFICIENCY OF
    SERVICE OF PROCESS OF THE
    ADVERSARY PROCEEDING
    SUMMONS AND COMPLAINT ...................5

    A.    Vacating a Default Judgment,
          Generally................................................5
    B.    Improper Service Under the
          Bankruptcy Code ...................................6

    POINT II

    THE COURT BELOW ABUSED ITS
    DISCRETION IN DENYING THAT
    BRANCH OF THE MOTION MADE
    PURSUANT TO F.R. CI. P. 60(b)(1)
    SINCE THERE WAS NO
    COGNIZABLE PREJUDICE TO
    APPELLEE .....................................................9

i

A.  F.R.  Civ.  P.  §60(b)(1)
    Introduction..............................................9
B.  Flintlock's  Default  was  not
    Willful....................................................9
C.  Setting Aside the Default will not
    Prejudice S&S.......................................10
D.  Flintlock's Meritorious Defense..........11

    1.  Introduction ...............................11
    2.  Enforceability  of  a
        Guaranty ...................................11
    3.  Fraud  in  the  Inducement
        and F.R. Civ. P. §9(b)................13
E.  Conclusion....................................................15

CONCLUSION ......................................................17

# TABLE OF AUTHORITIES

Page

*Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 52 (2d Cir. 1995) ..........................14

*Amer. Rattan & Reed Manu. Co., Inc. v. Cone*, 198 A.D. 843, 847,
190 N.Y.S. 782 (1921) ......................................................................................12

*American Alliance Insurance Co. Ltd. v. Eagle Insurance Co.,* 92
F.3d 57, 59 (2d Cir. 1996)..................................................................9, 10, 11

*Berardi v. Dah Yang Industry Co., Ltd.*, 1994 U.S. Dist. LEXIS
18776 (S.D.N.Y. 1995) ......................................................................................6

*Burda Media, Inc. v. Christian Viertel*, 417 F.3d 292, 298, 2005
U.S. App. LEXIS 16197 (2nd Cir. 2005)............................................................5

*Central Vermont Public Service Corp. v. Herbert*, 341 F3d 186,
189 (2nd Cir. 2003) ............................................................................................5

*Chill v. GE*, 101 F. 3d 263, 276 (2d Cir. 1996); *Acito*, 47 F. 3d at
52.......................................................................................................................14

*In re: Cruisephone Inc.*, 278 B.R. 325 (Bankr. E.D.N.Y 2002) ........................6

*Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983) ..........................................10

*Evansville Nat. Bank v. Kaufmann* 93 N.Y. 273, 279 (1883) ...........................12

*In re Golden Books Family Entertainment, Inc.*, 269 B.R. 300, 305
(Bankr. D. Del. 2001) .........................................................................................7

*In re: Lenox Healthcare, Inc.* 2005 Bankr. Lexis 90 (Bankr. D.
Del. 2005) ......................................................................................................6, 7

*JPMorgan Chase Sec. Litig.,* 363 F. Supp. 2d 595, 615 (S.D.N.Y.
2005) .............................................................................................................13, 14

*Local 78, Asbestos, Lead & Hazardous Wast Laborers v. Termon
Construction, Inc.,* 2003 U.S. Dist. LEXIS 15181 (S.D.N.Y. 2003)..................6

*Malletier v. Barami Enterprises, Inc.,* 2006 U.S. Dist. Lexis 5331
(S.D.N.Y. 2006) ...........................................................................................9, 11

*Pecarsky v. Galaxiworld.com Limited*, 249 F.3d 167, 171 (2d Cir. 2001) ..................................................................................................9

*Satterfield v. Pfizer, Inc.*, 2005 U.S. Dist. Lexis 14923 (S.D.N.Y. 2005) ..............................................................................................5, 7

*SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998)
*Stand. Oil. Co., v. Koch,*  260 N.Y. 150, 154, 183 N.E. 278, 279 (1932) ...............................................................................................9

*State Street Bank And Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 178, 2004 U.S. App. LEXIS 11731 (2nd Cir. 2004).....................5

*Steiner v. Atochem, S.A.,* 2002 U.S. Dist. LEXIS 14848 (S.D.N.Y. 2002) ..............................................................................................6

*In re: Sun Healthcare Group, Inc. Pecarsky v. Galaxiworld.com Limited*, 249 F.3d 167, 171 (2d Cir. 2001) ....................................6, 7

*In re: Suprema Specialties, Inc.*, 330 B.R. 40, 53 (S.D.N.Y. 2005) .............9, 10

*United States of America v. Patrick B. Bennett*, 2004 U.S. Dist. LEXIS 5722 (S.D.N.Y. 2004)........................................................5, 6

*In re Villar*, 317 B.R. 88, 93 (B.A.P. 9th Cir. 2004)...........................................7

*Wolf A. Popper v. Johannes Podhragy*, 48 F. Supp.2d 268, 271, 1998 U.S. Dist. LEXIS 18914 (S.D.N.Y. 1998)...............................6

Bankruptcy Rule 7004(b)(3) ...................................................................5, 6, 7
F.R.Civ.P. 9(b)...........................................................................13, 14, 15, 16
Fed. R. Civ. P. 60(b)(1).........................................................................1, 9, 16
Fed. R. Civ. P. 60(b)(4)........................................................................1, 5, 6. 8

## PRELIMINARY STATEMENT

Appellant Flintlock Construction Services, LLC ("Flintlock") submits this Brief in support of its appeal from the Order of the Hon. Adlai Hardin, U.S.B.J. dated February 28, 2007 (A-144) which denied Flintlock's motion pursuant to F.R.Civ.P. 60(b)(4) or alternatively F.R.Civ.P. 60(b)(1) to set aside the default judgment entered against it on January 27, 2006.

## STATEMENT OF FACTS

### Background

This adversary proceeding stems from a contract between Flintlock, as design/build contractor, and the Purchase College Foundation Housing Corporation ("PCFHC"), as owner, for the construction of thirteen new student residential buildings at the State University of New York College of Purchase, which consisted of two phases of construction (the "Project") (A-35).

As part of the Project, on or about September 9, 2002, Flintlock entered into an agreement with defendant TAP Plumbing & Heating, Inc. ("TAP") (A-40). TAP, as subcontractor, agreed to provide Flintlock with certain labor, materials and/or equipment required for the Project's plumbing systems (A-35).

TAP then entered into an agreement with S&S, as sub-subcontractor, under which S&S was to furnish and install certain labor and materials at the Project for TAP (A-35).

Upon information and belief, in or about January, 2003, TAP breached its subcontract with S&S by failing to remit certain payments to S&S (A-35).

In order to complete the first phase of the Project, Flintlock needed S&S, as a licensed sprinkler suppression contractor, to perform certain sprinkler inspections therein (A-35).

To induce S&S to perform said sprinkler inspections, Flintlock issued a letter to S&S

1

dated February 24, 2003, which stated that "Flintlock agrees that payments due to TAP from pending and future requisitions will be paid to S&S until S&S has been fully paid according to the terms of its contract with TAP." (the "February 24th Letter") (A-35; A-43).

S&S alleges in its Complaint under multiple theories that TAP and/or Flintlock owes S&S $70,775.00 for work completed pursuant to its subcontract with TAP (A-47).

S&S acknowledges in its Verified Complaint that the February 24th Letter was issued to induce S&S to perform the inspections, and further that it contained only two conditions to S&S being paid: (a) that Flintlock would pay S&S out of "pending and future requisitions" of TAP (A-47); and (b) that S&S would perform the sprinkler system inspections on the first phase of the Project (A-48).

Before either condition was met Flintlock paid S&S $10,000.00 on February 25, 2003 in furtherance of the February 24th Letter; the day after that, Flintlock paid S&S another $5,000.00 (A-36; A-55-57). These payments were made as a sign of good faith, to further induce S&S to perform the sprinkler system inspections (A-36).

Eleven (11) days subsequent thereto, Flintlock was forced to terminate TAP's subcontract (A-59). During that time, Flintlock never received any requisitions from TAP nor did it make any payments to TAP (A-61; A-36).

Furthermore, S&S's allegation that it performed the sprinkler inspection for the sprinkler piping (A-48 [¶15]) is entirely false. D&T Mechanical, as completion contractor for TAP, performed the sprinkler inspections and obtained the requisite certificates for the sprinkler systems, not S&S (A-68-87; A-36).

As such, Flintlock paid S&S $15,000.00 in connection with the February 24th Letter, even

2

though neither condition was met: TAP never submitted a requisition to Flintlock; and S&S never performed the sprinkler inspections (A-36).

Flintlock asserts herein that it has completely performed its obligations under the February 24th Letter and bears no further liability to S&S (A-36).

Flintlock further asserts that S&S breached the February 24th Letter by receiving payment thereunder and refusing to perform the sprinkler system inspections as promised (A-36).

### Service of Process and Procedural History

Defendant Flintlock is a New York limited liability company engaging in general construction with a current address of 77 N. Water Street Greenwich, CT 06830.  (A-37 [¶17]).

Debtor S&S Fire Suppression Systems, Inc.'s ("S&S") Complaint in this proceeding was sent to Flintlock via first class mail.  (A-37; A-89).

The Complaint was mailed in an unmarked envelope, postmarked August 25, 2005, to Flintlock's old address, and was labeled as follows:

**Flintlock Construction Services**
**100 Putnam Green**
**Greenwich, Connecticut 06830**

(A-37; A-89)

Upon information and belief the United States Post Office forwarded the S&S Complaint to Flintlock's current address, located at 77 Water Street, Greenwich, CT  06831 (A-37 [¶17]). S&S utilized no other form of service besides first class mail as described above (A-37 [¶18]).

Flintlock nevertheless forwarded the Complaint to its corporate counsel, John Mahoney, Esq.  Flintlock believed that Mr. Mahoney would interpose an answer to the complaint since Flintlock's a limited liability company could only appear in the proceeding through its counsel

3

(A-37 [¶19]; A-21 [¶4]).

Flintlock eventually received S&S's Motion for the Entry of Judgment by Default (A-37 [¶20]).[1] Upon receipt, Flintlock immediately forwarded the motion papers to Mr. Mahoney.  On January 23, 2006, two days before the Motion's return date, Mr. Mahoney advised Flintlock for the first time that an answer had not been interposed despite Flintlock's prior instructions to him (A-37 [¶21]).

On January 24, 2006, Flintlock discharged Mr. Mahoney, as its counsel, and retained Hollander & Strauss, LLP to represent its interests in the adversary proceeding (A-38 [¶22]; A-26 [¶32]).  On January 24, 2006, Flintlock's new counsel, Larry B. Hollander, Esq., called the Court in an attempt to adjourn the Motion via telephone, but the Court refused (A-26 [¶33]).

On January 25, 2006, Mr. Hollander appeared in Court on behalf of Flintlock to oppose the S&S Motion.  The Court however would not entertain Flintlock's opposition and advised counsel to bring the instant Motion a motion to vacate the default judgment (A-26-27 [¶34]) which was entered against Flintlock on January 27, 2006 (A-15).

On January 26, 2007, Flintlock moved to reopen the subject bankruptcy case in the adversary proceeding (which was terminated on May 31, 2006), set aside the default judgment and for related relief (A-18).  Oral argument on the motion was heard by Judge Hardin on February 22, 2007 (A-132).  Judge Hardin denied the motion at oral argument and on February 28, 2007, he signed an Order to that effect (A-144) from which Flintlock hereby appeals (A-145).

---

[1]   S&S's Motion was delivered in the exact same manner as the Complaint was served.

**ARGUMENT**

**POINT I**

**THE COURT BELOW COMMITED AN ERROR OF LAW AND/OR ABUSED ITS DISCRETION BY FAILING TO RECOGNIZE THE UNDERLYING JUDGMENT WAS VOID DUE TO INSUFFICIENCY OF SERVICE OF PROCESS OF THE ADVERSARY PROCEEDING SUMMONS AND COMPLAINT**

**A.    Vacating a Default Judgment, Generally**

It is Flintlock's position that the subject default judgment is void because S&S failed to

effect proper service of process pursuant to Bankruptcy Rule 7004(b)(3).

Rule 60(b)(4) of the Federal Rules of Civil Procedure allows a court to relieve a party

from a final judgment when that judgment is void.  *Satterfield v. Pfizer, Inc.*, 2005 U.S. Dist.

Lexis 14923 (S.D.N.Y. 2005).  In pertinent part Rule 60(b)(4) states:

> "On motion and upon such terms as are just, the court may relieve
> a party or party's legal representative from a final judgment, order,
> or proceeding for the following reasons: . . .(4) the judgment is
> void; . . ." Fed. R. Civ. P. 60(b)(4)

Under Rule 60(b)(4) a deferential standard of review is not appropriate because if the

underlying judgment is void, it is a per se abuse of discretion for a court to deny a movant's

motion to vacate the judgment under Rule 60(b)(4).  *Central Vermont Public Service Corp. v.*

*Herbert*, 341 F3d 186, 189 (2nd Cir. 2003); *Burda Media, Inc. v. Christian Viertel*, 417 F.3d 292,

298, 2005 U.S. App. LEXIS 16197 (2nd Cir. 2005) [deferential standard of review not appropriate

under Rule 60(b)(4) because if the underlying judgment is void, it is a per se abuse of discretion

to deny motion to vacate]; *State Street Bank And Trust Co. v. Inversiones Errazuriz Limitada*,

374 F.3d 158, 178, 2004 U.S. App. LEXIS 11731 (2nd Cir. 2004); *United States of America v.*

5

*Patrick B. Bennett*, 2004 U.S. Dist. LEXIS 5722 (S.D.N.Y. 2004); *Local 78, Asbestos, Lead &*
*Hazardous Wast Laborers v. Termon Construction, Inc.*, 2003 U.S. Dist. LEXIS 15181
(S.D.N.Y. 2003); *Steiner v. Atochem, S.A.*, 2002 U.S. Dist. LEXIS 14848 (S.D.N.Y. 2002)
["court has no discretion with respect to motions to vacate void judgments under Rule
60(b)(4)"]; *Wolf A. Popper v. Johannes Podhragy*, 48 F. Supp.2d 268, 271, 1998 U.S. Dist.
LEXIS 18914 (S.D.N.Y. 1998) [While other motions to vacate under Fed. R. Civ. P. 60(b) are
left to court's discretion, a Rule 60 (b)(4) motion must be granted if it is found the court initially
lacked jurisdiction]; and *Berardi v. Dah Yang Industry Co., Ltd.*, 1994 U.S. Dist. LEXIS 18776
(S.D.N.Y. 1995) [court does not have discretion when ruling on a Rule 60(b)(4) motion].

**B.**    <u>**Improper Service under the Bankruptcy Code**</u>

    The instant Default Judgment should have been held void as a matter of law based on the
fact that S&S failed to effect proper service of process pursuant to Bankruptcy Rule 7004(b)(3).
Bankruptcy Rule 7004(b)(3) requires that service by first class mail on a domestic corporation be
addressed to "the attention of an officer, a managing agent or a general partner, or to any other
agent authorized by appointment or by law" to receive service of process. Fed. R. Bankr. P.
7004(b)(3); *In re: Cruisephone Inc.*, 278 B.R. 325 (Bankr. E.D.N.Y 2002). This requires that
service of process be addressed to an appropriate individual at the corporation by name or by
title. *In re: Lenox Healthcare, Inc.* 2005 Bankr. Lexis 90 (Bankr. D. Del. 2005); *In re: Sun
Healthcare Group, Inc.* 2004 Bankr. Lexis 572 (Bankr. D. Del. 2004).

    Because "nationwide service of process by first class mail is a rare privilege which should
not be abused or taken lightly," Courts have required strict compliance with Rule 7004(b)(3). *In*

6

*re Villar*, 317 B.R. 88, 93 (B.A.P. 9th Cir. 2004); *In re: Lenox Healthcare, Inc.* supra. Courts vary on the specificity required: some courts require that it be addressed to a person by name, while others require that it be addressed to that person's title. Id. However, Courts universally agree that merely mailing the Complaint to the corporation's post office box is insufficient. Id.

Here it is undisputed that S&S delivered the Complaint to Flintlock by first class mail to 100 Putnam Green, Greenwich Connecticut 06830, its *previous* office location, without addressing the process to the attention of any officer, managing agent or general agent of Flintlock. (Exhibit "H") (Weiss Afdvt., ¶16)

Failure to address the service of process to the attention of an officer or agent of Flintlock per se violates the statutory requirements of Bankruptcy Rule 7004(b)(3). *In re Golden Books Family Entertainment, Inc.*, 269 B.R. 300, 305 (Bankr. D. Del. 2001); *In re: Sun Healthcare Group, Inc.*, supra. Notice *must* comply with the literal requirements of Bankruptcy Rule 7004(b)(3). Id.

Consequently, S&S's service of process did not meet the requirements of Bankruptcy Rule 7004(b)(3). A Default Judgment entered when there has been no proper service of process is void as a matter of law. *Satterfield v. Pfizer, Inc.* supra. Accordingly, the Default Judgment against Flintlock should be vacated.

As demonstrated by the transcript of the proceedings before Judge Hardin on February 22, 2007, the court below effectively ignored the issue of the invalidity of the service of process of the adversary proceeding. Rather, Judge Hardin stated that Flintlock "did nothing to make a motion to quash their purportedly inaccurate process." (A-133) Flintlock submits, however, that the aforementioned authorities concerning the effect of improper service of process under

7

Bankruptcy Rule 7000(b)(3) do not require a motion to quash as a prerequisite to relief under Rule 60(b)(4).  Moreover, the circumstances concerning Flintlock's failure to submit opposition to the debtor's motion for a default judgment, namely, prior counsel's failure to take any steps to defend Flintlock's interest despite Flintlock's prompt forwarding of the Summons and Complaint and motion for default judgment to its former counsel, did not "waiv[e]"  Flintlock's right to relief under Rule 60(b)(4) (A-142).

**POINT II**

**THE COURT BELOW ABUSED ITS DISCRETION IN DENYING THAT BRANCH OF THE MOTION MADE PURSUANT TO F.R. CIV. P. 60(b)(1) SINCE THERE WAS NO CONGNIZABLE PREJUDICE TO APPELLEE**

**A.      F.R.CIV.P §60(b)(1), Introduction**

Rule 60(b)(1) of the Federal Rules of Civil Procedure allows a Court to relieve a party from a default judgment based on excusable neglect.  In pertinent part Rule 60(b)(1) provides:

> "On motion and upon such terms as are just, the court may relieve a party or party's legal representative from a final judgment, order, or proceeding for the following reasons:  .  .  .(1) mistake, inadvertence, surprise, or excusable neglect;  .  .  ." Fed. R. Civ. P. 60(b)(1)

In the default judgment context, courts examine three criteria to determine whether to vacate the judgment: (1) whether the default was willful; (2) the level of prejudice that may occur to the non-defaulting party if relief is granted; and (3) whether the defendant has a meritorious defense. *Pecarsky v. Galaxiworld.com Limited*, 249 F.3d 167, 171 (2d Cir. 2001); *American Alliance Insurance Co. Ltd. V Eagle Insurance Co.,* 92 F.3d 57, 59 (2d Cir. 1996); *Malletier v. Barami Enterprises, Inc.*, 2006 U.S. Dist. Lexis 5331 (S.D.N.Y. 2006); *In re: Suprema Specialties, Inc.*, 330 B.R. 40, 51-2 (S.D.N.Y. 2005).  It is Flintlock's position that the Default Judgment should have been vacated due to Flintlock's excusable neglect in failing to appear in this adversary proceeding.

**B.      Flintlock's Default was not Willful**

Flintlock's failure to appear in this adversary proceeding was not willful.  The Second Circuit has interpreted "willfulness" as being more than merely negligent or careless. *Malletier v. Barami Enterprises, Inc.*, supra, citing *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). The

9

Courts are to look for bad faith, or at least something more than mere negligence before rejecting a claim of excusable neglect based on an attorney's or a litigant's error. *American Alliance,* 92 F.3d 57, 60.

Here, there is no bad faith or gross negligence.  When the Complaint was improperly served as noted herein, Flintlock forwarded the Complaint to its corporate counsel, John Mahoney, Esq. (A-37).  Flintlock's principal believed that Mr. Mahoney would interpose an Answer to the Complaint, since Flintlock is a corporation and could only appear in the proceeding through counsel.  Unknown to Flintlock's principal, an answer was not interposed. (A-37).

Once apprised of its failure to appear, Flintlock immediately took steps to avoid entry of the Default Judgment.  Flintlock retained new counsel who attempted to adjourn the S&S Motion so that it may interpose opposition and/or serve an Answer to S&S's Complaint. (A-37).  When the adjournment was not granted, Flintlock's new counsel appeared in Court to oppose S&S's Application for a Default Judgment (A-26).  Based on these circumstances it is evident that Flintlock's failure to appear did not rise to the level of a willful default.

**C.**     **Setting Aside the Default will not Prejudice S&S**

The initial burden of proving that undue prejudice will result from vacating the Default Judgment falls upon the non-moving party.  That party must demonstrate that the delay will somehow result in either the loss of evidence, create increased difficulties of discovery, or provide opportunities for fraud and collusion.  *In re: Suprema Specialties, Inc.,* 330 B.R. 40, 53 (S.D.N.Y. 2005); citing *Davis v. Musler,* 713 F.2d 907, 916 (2d Cir. 1983).

Here, although the Default Judgment was entered on January 27, 2006 (A-15), any delay

10

caused by vacating the default would not have resulted in the loss of evidence, created increased difficulties of discovery, or provided opportunities for fraud and collusion. In the proceedings below, S&S failed to articulate any cognizable prejudice which might result from the grant of Flintlock's motion.

A review of the transcript of the February 22, 2007 proceedings before Judge Hardin reveals that the court below *sua sponte* presumed the existence of prejudice to S&S by the grant of its motion based on purported issues of time. Flintlock submits, however, that the limited efforts made by S&S to obtain summary judgment against defendant TAP Plumbing have virtually no bearing on the instant matter. Stated otherwise, S&S would have been required to conduct discovery vis a vis Flintlock in the underlying adversary proceeding (and, more likely, defend a motion for summary judgment by Flintlock based upon the absence of its liability under the February 24 Letter). That presumption of prejudice was an abuse of the court's discretion.

**D.    Flintlock's Meritorious Defense**

*1.    Introduction*

Flintlock maintains several meritorious defenses to S&S's claims. "A defense is meritorious if it is good at law so as to give the factfinder some determination to make at trial." *Malletier v. Barami Enterprises, Inc.*, supra, citing *American Alliance*, 92 F.3d at 61. "However, the defense need not be ultimately persuasive at this stage." *American Alliance*, 92 F.3d at 61.

*2.    Enforceability of a Guaranty*

It is a fundamental rule that a guaranty must be in writing and must be strictly construed as to the terms therein. "Under the Statute of Frauds…every agreement to answer for the debt of another person is void unless it, or some note or memorandum thereof be in writing and

11

subscribed by the party to be charged therewith." *Stand. Oil. Co., v. Koch,* 260 N.Y. 150, 154, 183 N.E. 278, 279 (1932). "…the writing must contain all the substantial and material terms of the contract, and must show on its face what the whole agreement, is, so far as the same is executory and remains to be performed and rests upon unfulfilled promises." Id. "The intention of the parties is to be ascertained and enforced if it be lawful and adequately expressed in the instrument…[t]he contract of the [guarantor], however, when determined, is not to be extended by implication or construction." *Amer. Rattan & Reed Manu. Co., Inc. v. Cone*, 198 A.D. 843, 847, 190 N.Y.S. 782 (1921).

Moreover, it is long-established that where a guarantor limits its liability, either to time, amount or an express condition precedent, that no liability attaches unless such conditions are satisfied. *Evansville Nat. Bank v.* Kaufmann, 93 N.Y. 273, 279 (1883).

Here, Flintlock and S&S agree that the February 24th Letter was a guaranty, from Flintlock to S&S, which contained two condition precedents to S&S being paid: (a) that Flintlock would pay S&S out of "pending and future requisitions" of TAP (A-43); and (b) that S&S would perform the sprinkler system inspections on the first phase of the Project (A-47 [¶¶ 15, 16, 39]) (A-36 [¶ 9]).

Neither of the two conditions under the February 24th Letter occurred: Flintlock never received a requisition from TAP; and S&S never performed the sprinkler system inspections (A-36). That being said, Flintlock still paid S&S $15,000.00 in the two days following the issuance of the February 24th Letter, as a sign of good faith, to further induce S&S to perform the sprinkler system inspections (A-43) (A-36 [¶ 10]).

Flintlock asserts herein that it has completely performed its obligations under the

12

February 24th Letter and bears no further liability to S&S (A-36 [¶ 14]). Flintlock further asserts that S&S breached the February 24th Letter by receiving payment thereunder and refusing to perform the sprinkler system inspections as promised (A-36-37 [¶15]). Contrary to the allegations of S&S, D&T Mechanical, completion contractor for TAP, performed the sprinkler inspections and obtained the requisite certificates for the sprinkler systems, not S&S (A-68-87) (A-36 [¶12]).

Finally, the February 24th Letter cannot be interpreted as passing TAP's pre-existing liability to S&S onto Flintlock. The February 24th Letter is very clear when it guarantees to pay S&S for any additional owed to TAP arising from "pending and future requisitions." (A-43).

> 3.   *Fraud in the Inducement and F.R.Civ. P. §9(b)*

F.R.Civ.P. §9(b) states that, in pertinent part, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

The United States Court of Appeals for the Second Circuit has interpreted F.R.Civ.P §9(b) as requiring that the Complaint must;

> (a) Specify the fraudulent statements;
>
> (b) Identify the speaker;
>
> (c) Detail where and when the statements were made; and
>
> (d) Explain why the statements were fraudulent.

> *JPMorgan Chase Sec. Litig.,* 363 F. Supp. 2d 595, 615 (S.D.N.Y. 2005).

"[T]he Second Circuit has admonished that a Court must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on

speculation and conclusory allegations." *Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 52 (2d Cir. 1995). Instead, plaintiffs must allege a strong inference of fraudulent intent either: (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud; or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. *JP Morgan Chase Sec. Litig.,* 363 F. Supp. 2d at 615.; *Chill v. GE,* 101 F. 3d 263, 276 (2d Cir. 1996); *Acito,* 47 F. 3d at 52.

In the instant matter, S&S failed to satisfy the heightened pleading requirements under F.R.Civ.P §9(b); its allegations of Fraudulent Inducement are based on conclusory and disingenuous statements that undoubtedly require further examination from the Court.

In its Complaint, S&S alleges simply that the February 24th Letter "was false and constituted a misrepresentation of fact which was false and at all times known to Flintlock to be false" (A-50 [¶40]) and that Flintlock issued it "for the purpose of inducing S&S to act upon and rely upon knowingly false statements." (A-50 [¶ 41]).    S&S further alleges that "S&S justifiably relied upon the misrepresentations of Flintlock and was induced by Flintlock into providing the inspections for the work it had performed." (A-50 [¶ 42]).

Flintlock controverts S&S's allegations and offers the documents that properly substantiate its claim.  The February 24th Letter specifically stated that Flintlock's financial liability to S&S extended to "payments due to TAP from pending and future requisitions." (A-43).  TAP was terminated from the Project 11 days later (A-59), and, during that time, Flintlock never received any requisitions from TAP nor did it make any payments to TAP (A-61; A-36 [¶11]).

In the two days following the issuance of the February 24th Letter, before either condition was met, Flintlock still paid S&S $15,000.00 as a sign of good faith, to further induce S&S to

14

perform the sprinkler inspections (A-55) (A-36 [¶10]).  Finally, a question of fact surrounds S&S's allegation that it performed the sprinkler system inspections in reliance to the February 24th Letter, as documents prove that D&T Mechanical, as completion contractor to TAP, performed that work (A-68-87; A-36 [¶12]).

Flintlock substantiates herein that it acted reasonably and honorably under the terms of the February 24th Letter.  S&S, on the other hand, failed to satisfy the heightened pleading requirements under F.R.Civ.P §9(b); its allegations of Fraudulent Inducement are based on conclusory and disingenuous statements that require further examination from the Court.

E.    **Conclusion**

As demonstrated, Flintlock established the three factors which comprise excusable neglect.

Flintlock showed that its failure to appear in this adversary proceeding was not willful. When Flintlock received the improperly-served papers, it immediately forwarded such to its corporate counsel.  Once apprised of its failure to appear, Flintlock immediately took steps to avoid entry of the default judgment.  Flintlock's failure to appear did not rise to the level of a willful default.

The burden of proving that undue prejudice would result from vacating the Default Judgment fell upon S&S.  Here, S&S failed to satisfy that burden.  Rather, the court below incorrectly presumed the existence of prejudice because of the closure of the bankruptcy proceeding and the grant of summary judgment in favor of S&S against defendant TAP Plumbing (A-141).

Flintlock clearly demonstrated that it maintains meritorious defenses to Plaintiff's claims.

First, in response to S&S's claim for Breach of Contract: the February 24th Letter, the central document to S&S's claim, is deemed by the Law to be a guaranty, and must be read strictissimi juris: the condition precedent therein must be literally read and strictly construed. Under the condition, Flintlock is freed from any liability to S&S, and nowhere thereunder does Flintlock accept the pre-existing liabilities of TAP to S&S.

Second, S&S has a duty under F.R.Civ.P §9(b) to plead its Fraudulent Inducement claim with a heightened level of particularity: Plaintiff had a duty to substantiate where, when and why Flintlock made fraudulent statements. As herein demonstrated, the conclusory allegations made by Plaintiff in its pleadings do not satisfy this requirement.

In conclusion, Flintlock satisfied the elements pursuant to F.R.Civ.P 60(b)(1) that warranted relief to Flintlock from the Default Judgment entered against it. Flintlock respectfully requests that this Court reverse the denial of the motion and allow this matter to be heard on it merits.

## CONCLUSION

Based upon the foregoing, Appellant Flintlock Construction Services, LLC respectfully requests that the Court enter an order reversing the February 26, 2007 Order Denying Motion of Flintlock Construction Services, LLC to Reopen Adversary Proceeding and Set Aside Default Judgment of the Honorable Adlai S. Hardin, Jr., U.S.B.J. and grant the motion vacating the Default Judgment entered against Flintlock in this adversary proceeding.

Dated: Great Neck, New York
      May 8, 2007

Respectfully submitted,

**HOLLANDER & STRAUSS, LLP**
Attorneys for Appellant
Flintlock Construction Services

By:_____
     Michael R. Strauss (MS7780)
40 Cutter Mill Road, Suite 203
Great Neck, New York 11021
(516) 498-1000

G:\1324-104\S&S Appeal\Brief.doc

17