# EXHIBIT "8"

Rosemarie E. Matera (REM-0999)
Kurtzman Matera Gurock & Scuderi, LLP
2 Perlman Drive
Spring Valley, New York 10977
845-352-8800

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:                                                   Chapter 11
                                                         Case No. 04-22183(ASH)
S&S Fire Suppression Systems, Inc.

                                    Debtor.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

S&S Fire Suppression Systems, Inc.                       Adv. Pro. No. 05-08645(ASH)

                                    Plaintiff,

        v.

TAP Plumbing & Heating Inc. and
Flintlock Construction Services, L.L.C.,

                                    Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**OPPOSITION OF S & S FIRE SUPPRESSION SYSTEMS, INC., TO THE MOTION
OF FLINTLOCK CONSTRUCTION SERVICES, LLC TO (A) REOPEN
BANKRUPTCY CASE; AND (B) SET ASIDE DEFAULT JUDGMENT
AND STAY ENFORCEMENT AND EXECUTION**

TO:   THE HONORABLE ADLAI S. HARDIN JR.
      UNITED STATES BANKRUPTCY JUDGE

        S & S FIRE SUPPRESSION SYSTEMS, INC. ("S&S") the reorganized debtor and plaintiff

in the above captioned adversary proceeding, submits this Opposition To The Motion of Flintlock

Construction Services, LLC  ("Flintlock") To  (a) Reopen Bankruptcy Case; and (b) Set Aside

Default Judgment and Stay Enforcement and Execution, and respectfully sets forth as follows:

                                    **BACKGROUND**

        1.      S&S filed a Complaint against TAP Plumbing & Heating Inc. ("TAP") and Flintlock

("Complaint") on August 17, 2005.  The Clerk of the Court issued the Summons with Notice of Pre-

Trial Conference ("Summons and Notice") on August 23, 2005. The Summons and Notice was served on TAP and Flintlock on August 25, 2005.

2.     TAP filed an answer to the Complaint on October 6, 2005 raising a Counterclaim against S&S and a Crossclaim against Flintlock.

3.     Flintlock (i) did not answer the Complaint [1]; (ii) did not answer the Crossclaim; and (iii) did not appear at the pre-trial conference.

4.     On November 28, 2005, the Clerk of the Court entered a default against Flintlock. The motion for default was brought on January 11, 2006. No response to the default motion was filed by Flintlock. On January 24, 2006, counsel for Flintlock requested an adjournment of the hearing. The Court declined to grant the adjournment. The hearing was held on January 25, 2006. The transcript of the hearing is annexed hereto as Exhibit "B". The Order granting the default judgment ("Order") was signed on January 25, 2006 and entered January 27, 2006.

5.     The adversary proceeding continued as to S&S and TAP. It was resolved by an Order granting summary judgment on March 30, 2006. The adversary proceeding was closed by the Clerk of the Court on May 31, 2006.

6.     On January 26, 2007, 365 days after the entry of the Order and 520 days after the issuance of the Summons and Notice, Flintlock filed the instant Motion.

## ARGUMENT

### THE COURT SHOULD DECLINE
### TO REOPEN THE ADVERSARY PROCEEDING

A.     **Introduction**

7.     Initially, as noted by the Clerk of the Court the Motion seeks to incorrectly utilize

---

[1] Flintlock also chose not to respond to the demand letter of July 20, 2005, Exhibit "A" hereto.

Section 350 of the United States Bankruptcy Code ("Bankruptcy Code") and Federal Rule of Bankruptcy Procedure ("Rule") 5010 to reopen the adversary case. "Section 350 applies only to reopening bankruptcy cases and not to reopening adversary proceedings." In re Sun Healthcare Group, Inc., 2004 WL 941190 *1 (Bankr. D Del.) See also In re The Carbide Graphite Group, Inc., 338 B.R. 273, 275-76 ("11 U.S.C. §350 deals with the closing and reopening of a *bankruptcy* case. '[C]ase' is a term of art in bankruptcy practice and is to be distinguished from the adversary proceeding.") (citations omitted).

8.    Rule 7055(c) addresses the method by which to seek to set aside an entry of default and default judgment. In this regard, Flintlock accurately looks to Rule 9024. (Federal Rule of Civil Procedure "FRCP" 60(b). The specific subsections of FRCP 60 referenced in the Motion are 60(b)(1) and 60(b)(4). Under either subsection, "the motion shall be made within a **reasonable** time" (emphasis added). Waiting a year from the entry of the Order was not reasonable.

**B.    FRCP 60(b) AND THE REASONABLENESS REQUIREMENT**

9.    FRCP 60(b) sets forth the grounds on which a court, in its discretion, can rescind or amend a final judgment or order. " 'Properly applied FRCP 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments. Final judgments should not be lightly reopened' and [t]he Rule may not be used as a substitute for a timely appeal. Since 60(b) allows extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances. A motion seeking such relief is addressed to the sound discretion of the court." Nemaizer v. Baker, 793 F. 2d 58, 61 (2d Cir. 1986). (citations omitted). "The Second Circuit requires that a Rule 60(b) motion be supported by evidence that is highly convincing, that the movant show good cause for the failure to act sooner, and that no undue hardship result to the other parties." Chiulli v. Internal Revenue Service, 2006 WL 3008084 *2 (S.D.N.Y.), citing Greenberg v. Chrust, 01 Civ. 10090 (RWS), 2004 WL 585823 *3 (S.D.N.Y. March 25, 2004), Kotlicky v. United States Fidelity & Guarantee Co., 817 F. 2d 6, 9 (2d Cir. 1987).

10.    A motion brought pursuant to FRCP 60(b) must be made within "a reasonable time". In addition, if relief is being sought under subsection (1), (2) or (3) of FRCP 60(b), the motion must be made no later than one year after the challenged order was entered. "This does not mean, however, that every motion filed pursuant to subsection (1), (2) or (3) that is made within the maximum one year period will be considered timely; undue delay may nevertheless preclude a party from relief". Laurence v. Trans World Airlines, Inc., 1993 WL322796 *2 (S.D.N.Y.), citing Dickerson v. Baker, 133 F.R.D. 105, 106 n. 2 (S.D.N.Y. 1990). "What constitutes a 'reasonable time' is well within this Court's discretion. In re Meadowcroft, 2005 WL 1286006 *4 (Bankr. D. Vt.). (Finding a five month delay unreasonable). See also Truskoski v. ESPN, Inc., 60 F. 3d 74, 77 (2d Cir. 1995) (Motions under all parts of FRCP 60(b) must be made "within a reasonable time"); Dickerson v. Baker, id. "As the delay in making the motion approaches one year there should be a corresponding increase in the burden that must be carried to show the delay was reasonable." In re Worldcom, Inc. Securities Litigation, 2006 WL 2709855 *5 (S.D.N.Y.), quoting Amoco Overseas Oil Co. V. Compagnie Nationale Algerienne de Navigation, 605 F. 2d 648, 656 (2d Cir. 1979). "[W]hen a party demonstrates a lack of diligence in defending a lawsuit, a court need not set aside a default." State Street Bank and Trust Company v. Inversiones Errazuriz Limitada, 374 F. 3d 158, 177 (2d Cir. 2004).

11.    In the instant case, Flintlock took the one year maximum to the 365th day. Flintlock offers no reason whatsoever for the delay which mirrors its consistently prejudicial behavior in this matter. Indeed, at the January 25, 2006 hearing, counsel for Flintlock recognized and discussed the possibility of moving to vacate the default. Exhibit "B" at pp. 4-6. No motion was filed, however, until the very last day. Tellingly, the Motion is completely devoid of any facts justifying this blatantly unreasonable behavior. The Court in Chiulli v. Internal Revenue Service, id., at *3, observed that the Rule 60(b) motion was filed "merely one day before the expiration of the one year deadline. . . ". Given that the motion was filed at the very end of the one-year deadline and raised

arguments in support of the motion that clearly could have been made earlier, the motion was found to be untimely. See Cavalier Label Co. Inc. V. S.S. Lilika, 71 F.R.D. 395, 396 (S.D.N.Y. May 25, 2976) (Denying motion made 356 days after judgment; "while the motion was interposed strictly within the time limit of the Rule, that time limit is merely an outer limit"). Flintlock cannot be found to have acted "diligently" or "within a reasonable time". Its Motion to reopen this adversary proceeding should be denied.

**C.**    **Vacating a Default Judgment**

12.    Assuming *arguendo*, the Court finds that the Motion was brought within a "reasonable time", Flintlock next bears the burden of demonstrating an entitlement to the vacature of the default in accordance with the applicable factors. A motion for relief from judgment seeks "extraordinary judicial relief". It will, therefore, be granted only where the movant "meets its burden of demonstrating 'exceptional circumstances' ". In the context of a default judgment, a court's decision whether to permit relief from judgment should be based on three criteria: "(1) whether the default  was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." Bogaerts v. PNL Asset Management, L.P. (In re Litas International, Inc.) 2004 WL 1488114 *3 (S.D.N.Y.) ("Bogaerts") quoting Enron Oil Corp. V. Diakuhara, 10 F. 3d 90, 96 (2d Cir. 1993). In Bogaerts as here, the party requesting relief under Rule 9024 showed a willful disregard of the procedures of the Court in this adversary proceeding. At the January 25, 2006 hearing, counsel represented to this Court that "the client intended to defend this matter, and that it is clear on the merits of the case that there is no cause of action by S&S against my client."   If such were the case, why did "the client" (Flintlock) not literally panic when it received the motion for the entry of the default evidencing that no defense had been raised in this matter? Why would it not have thereafter diligently followed the actions of its counsel rather than wait until the day before the hearing on the default to merely seek an adjournment? Why did it not question what happened at the pre-trial conference? Why did it not question whether an

answer was interposed to the TAP crossclaim?  Why wait 520 days after the Complaint was filed to file a single piece of paper with this Court?

13.    In In re Globe Metallurgical, Inc., 327 B.R. 182, 185 (Bankr. S.D.N.Y. 2005), the Court found that conduct was not "willful" or "deliberate" as it is defined, where the next day after learning of the Entry of Default, new counsel was retained and less than two weeks later, the motion pursuant to FRCP 60(b), followed.  To the contrary, Flintlock knew of the default, did not respond to the default motion and waited a year to bring this Motion.  "[W]here a party deliberately defaults and intentionally fails to respond to a pleading or motion the party knew was pending, the willful factor is satisfied, regardless of whether the parties acted in good or bad faith." In re Enron, Inc., 325 B.R. 114, 118 (Bankr. S.D.N.Y. 2005).  Flintlock's conduct was willful.

14.    The second factor, prejudice to the non-defaulting party, is also present.  S&S has retained counsel to pursue its rights under the default judgment.  At this juncture, to have to begin again this process in its entirety would be extremely costly and present even greater delay.

15.    For the third factor, a meritorious defense, Flintlock relies on the service of the Complaint, the particularity of the pleading and the language of the letter this Court has already considered.  The Complaint was actually received by Flintlock.  It forwarded the Complaint to counsel and at the January 25, 2006 hearing voiced its intent to "defend this matter" and address the "merits of the case".  With the appearance at the January 25, 2006 hearing, this Court obtained personal jurisdiction over Flintlock.  See Teitelbaum v. Equitable Handbag Co. (In re Outlet Department Stores, Inc.), 49 B.R. 536. 540 (Bankr. S.D.N.Y. 1985) (Where the summons and complaint were actually received by the defendant, surely there was "notice reasonably calculated" to give actual notice of the proceedings).  Finally, coming full circle, to wait 520 days after the Complaint was filed to raise defective service in the face of admitted receipt, an admitted intent to defend and a Court appearance thereon, clearly does not warrant an exercise of discretion by this Court granting Flintlock relief from its own choices.

## **CONCLUSION**

15.     The Motion to reopen this adversary proceeding should be denied.

16.     In light of the case law cited herein, it is respectfully requested that the filing of a separate Memorandum of Law be waived.

WHEREFORE, it is respectfully requested that this Court deny the relief requested by Flintlock in its entirety.

Dated:   Spring Valley, New York
        February 9, 2007

                        Kurtzman Matera Gurock & Scuderi, LLP
                        Attorneys for Plaintiff
                        2 Perlman Drive
                        Spring Valley, NY   10977
                        (845) 352-8800


            By          _____/s/ Rosemarie E. Matera_____
                        Rosemarie E. Matera (REM-0999)

S:\WPFORMS\110043\TAP Adv Pro\Opposition to Motion of Flintlock.wpd

# EXHIBIT "A"

# KURTZMAN MATERA GUROCK SCUDERI & KARBEN, LLP

ERIC CHARLES KURTZMAN
ROSEMARIE E. MATERA*
HOWARD M. GUROCK*
THOMAS M. SCUDERI*
RYAN SCOTT KARBEN
ILISSA B. CHURGIN*

OF COUNSEL
AMY BALDWIN LITTMAN*
MICHAEL A. ZIMMERMAN

*ADMITTED NY & NJ

ATTORNEYS AT LAW
2 PERLMAN DRIVE
SPRING VALLEY, NEW YORK 10977

(845) 352-8800
FACSIMILE
(845) 352-8865
E-MAIL: law@kmgsk.com

BERTRAM P. KRASHES
SPECIAL COUNSEL
(1931 - 2001)

NEW JERSEY OFFICE

210C SUMMIT AVENUE
SUITE 900
MONTVALE, NEW JERSEY 07645
(201) 368-0807
FACSIMILE (201) 368-9112

July 20, 2005

**Via Fax # 203-531–0708**
Mr. Stephen Weiss, Jr.
Flintlock Construction Services LLC
100 Putnam Green
Greenwich, Conn. 06830

Re:    S&S Fire Suppression Systems, Inc.
                    v.
          TAP Plumbing & Heating, Inc.

Dear Mr. Weiss:

As of this date, TAP Plumbing & Heating, Inc., ("TAP") has yet to pay an obligation to S&S Fire Suppression Systems, Inc., ("S&S") despite due demand. A final request has been made for receipt of the funds due and owing on or before July 25, 2005. A copy of the letter is enclosed.

By letter dated February 24, 2003, Flintlock Construction Services LLC ("Flintlock") "acknowledged" the debt owed by TAP to S&S and agreed to make payment of "pending and future requisitions" to S&S.

S&S hereby demands payment from Flintlock in an amount of $70,775.00. In the absence of payment from TAP, which you can confirm with the undersigned or Domenick Serrano of S&S on July 26, 2005, please forward the full amount on or before July 28, 2005.

Very truly yours,

Kurtzman Matera Gurock
Scuderi & Karben, LLP

Rosemarie E. Matera

REM:cp
Enclosures
cc: Robert J. McGoey, Esq.
    Mr. Domenick Serrano

**THIS IS AN ATTEMPT TO COLLECT A DEBT.  Any information obtained will be
used for that purpose.**

# EXHIBIT "B"

012506 SS Fire v TAP.txt

1

```
 1    IN THE UNITED STATES BANKRUPTCY COURT
      FOR THE SOUTHERN DISTRICT OF NEW YORK
 2
      ----------------------x
 3    In Re:                  Case No. 04-22183
                              Chapter 11
 4    S&S FIRE SUPPRESSION
      SYSTEMS, INC.,
 5
              Debtor.         White Plains, NY
 6    ----------------------x January 25, 2006
      S&S FIRE SUPPRESSION     Adv #05-08645-ash
 7    SYSTEMS, INC.

 8              Plaintiff,
      -v-
 9
      TAP PLUMBING & HEATING,
10    INC. and FLINTLOCK
      CONSTRUCTION SERVICES LLC
11
              Defendants.
12    ----------------------x

13
            TRANSCRIPT OF MOTION FOR DEFAULT JUDGMENT
14

15        BEFORE THE HONORABLE ADLAI S. HARDIN
          UNITED STATES BANKRUPTCY COURT JUDGE
16

17    APPEARANCES:

18    For Plaintiff/       ROSEMARIE MATERA
      Debtor:               Kurtzman Matera Gurock &
19                          Scuderi LLP

20
      For Defendant:        LARRY HOLLANDER, ESQ.
21                         Hollander & Strauss LLP

22    Transcriptionist:    KAREN SCHMIEDER, CSR, RDR
                            Schmieder & Meister, Inc.
23

24
      Proceedings recorded by electronic sound recording;
25    transcript produced by transcription service.
```

2

012506 SS Fire v TAP.txt

1          THE CLERK:  S&S Fire Suppression,
2     Inc.
3          THE COURT:  Ms. Matera, hello.
4          MS. MATERA:  Good morning, Judge.
5          THE COURT:  Counsel.
6          MR. HOLLANDER:  Your Honor, Larry
7     Hollander, Hollander & Strauss, on behalf of
8     defendant Flintlock Construction Services in
9     opposition to the motion.
10          THE COURT:  I haven't seen your
11     opposition.
12          MR. HOLLANDER:  I was just retained
13     yesterday, Your Honor.  I called Chambers
14     yesterday for an adjournment.
15          THE COURT:  What's the opposition?
16     What's the basis for the opposition?
17          MR. HOLLANDER:  The basis of the
18     opposition, Your Honor, is that the client
19     intended to defend this matter, and that it
20     is clear on the merits of the case that
21     there is no cause of action by S&S against
22     my client.
23          THE COURT:  Well, the problem with
24     that, sir, is that the complaint was served
25     in August.  Your client has been in default

3

012506 SS Fire v TAP.txt

1    since September.  There is a letter in the
2    file, an exhibit to the complaint that on
3    the face of it, it appears to acknowledge
4    the liability.
5              MR. HOLLANDER:  I respectfully
6    disagree, Your Honor.  If you look at the
7    letter --
8              THE COURT:  It's not a question of
9    disagreeing.  The letter is there.  And
10   besides, it's January, it's the end of
11   January.  Your client has done nothing to
12   defend the case.  Maybe there's a good
13   defense.  You'll get a chance to make a
14   motion to reopen a default judgment and
15   prove the defense.  Which is what you're
16   going to have to do.  But somebody who
17   requires a trustee to file a claim on what
18   is on the face of it a valid claim,
19   following a letter, following two letters --
20   they are annexed to the complaint, Exhibits
21   2 and 3, I read them this morning -- and
22   then get sued and does absolutely nothing
23   about it until the day before a motion for a
24   default judgment does not manifest a good
25   faith intention to defend in good faith.  So

4

1    I'm going to grant the motion, and you'll
2    have ample opportunity to make a motion to

012506 SS Fire v TAP.txt

3    reopen the default.  But the burden is heavy

4    to do that.

5              MR. HOLLANDER:  May I have an

6    opportunity to respond before you --

7              THE COURT:  Sure, you can.

8              MR. HOLLANDER:  If I may, Your

9    Honor.

10             THE COURT:  Sure.

11             MR. HOLLANDER:  I have been

12   representing this client on litigations in

13   their construction field.  There is another

14   attorney that they have, his name is John

15   Mahoney.  He's been ill over time.  I've

16   taken over some cases for him.  I spoke --

17   what I was able to do yesterday, in addition

18   to counsel's cooperation in helping me to

19   catch up, was I was able to speak to both

20   the client and I got Mr. Mahoney on the

21   phone yesterday.

22             The client indicated to me with

23   respect to their intent to defend this

24   matter that they immediately told Mr.

25   Mahoney, who confirmed that to me when I

5

1    spoke with him yesterday.  The client's

2    understanding was that Mr. Mahoney was

3    handling it as he has and does other

012506 SS Fire v TAP.txt

4    matters.  In fact, Your Honor, the

5    defendant --

6         THE COURT:  Sir, what you're saying

7    may all be evidence by affidavits, not by

8    you, but by Mr. Mahoney --

9         MR. HOLLANDER:  Understood, Your

10   Honor.

11        THE COURT:  -- by the people in

12   your motion to reopen the default.  But your

13   client is woefully in default.  And I'm

14   going to grant the relief, because they're

15   entitled to relief.  All right?

16        MR. HOLLANDER:  Okay, Your Honor,

17   so you want me to move my motion to vacate

18   then?

19        THE COURT:  Whatever you want to

20   do.  I don't know what you will be advised

21   to do.

22        MR. HOLLANDER:  I understand.

23        THE COURT:  But your client has had

24   this complaint since August.  They've been

25   in default since September.  They have made

6

1    no effort to respond even to the motion for

2    a default judgment.  None.  So too little

3    too late.  All right?

4         MR. HOLLANDER:  Okay, Your Honor.

5         THE COURT:  Order is signed.

Page 5

012506 SS Fire v TAP.txt

6           MS. MATERA:  Thank you, Judge.

7           THE COURT:  Thank you, Ms. Matera.

8

9           (Whereupon, the above-captioned

10    electronically recorded proceedings

11    concluded.)

12

13

14           C E R T I F I C A T E

15      I certify that the foregoing is a correct

16 transcript from the OFFICIAL COPY of electronic

17 sound recording of the proceedings in the

18 above-entitled matter.

19

20

21    KAREN SCHMIEDER        7 February 2007

22

23

24

25

Page 6

Rosemarie E. Matera (REM-0999)
Kurtzman Matera Gurock & Scuderi, LLP
2 Perlman Drive
Spring Valley, NY 10977
(845) 352-8800

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:                                                                    Chapter 11
                                                                          Case No. 04-22183(ASH)
S&S Fire Suppression Systems, Inc.

                         Debtor.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
S&S Fire Suppression Systems, Inc.                                        Adv. Pro. No. 05-08645(ASH)

                         Plaintiff,

         v.

TAP Plumbing & Heating Inc. and            **AFFIDAVIT OF SERVICE**
Flintlock Construction Services, L.L.C.,

                         Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

State of New York  )

County of Rockland )ss

         Sherry Kramer, being duly sworn, deposes and says:

         1.      I am over the age of 18, not a party to this action and I reside in Pomona, New York
10970.

         2.      On February 9, 2007, I served a true copy of the **Opposition of S&S Fire
Suppression Systems, Inc., to the Motion of Flintlock Construction Services, LLC to (A)
Reopen Bankruptcy Case; and (B) Set Aside Default Judgment and Stay Enforcement and
Execution** by facsimile transmission upon the following:

Larry B. Hollander, Esq.
Hollander & Strauss, LLP
(516) 498-2875

                                                            ___ **/s/ Sherry Kramer** _____
                                                            Sherry Kramer

Sworn to before me this
9th day of February, 2007


 _ **/s/ Thomas M. Scuderi** _____
Notary Public

Thomas M. Scuderi
Notary Public State of New York
No. 02SC5024028
Qualified in Rockland County
Commission Expires February 22, 2010

# EXHIBIT "9"

FROM :BMB                          FAX NO. :9149466301              Feb. 20 2007 03:39PM P3

  FROM :MCGOEYLAW                  FAX NO. :                       Feb. 20 2007 01:39PM P2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
------------------------------------------------------------ X

INTERCOUNTY SUPPLY, INC.,

                     Plaintiff                  **DECISION AFTER
TRIAL**

         - against -
                                       **INDEX NO.: 11642/03**

TAP PLUMBING & HEATING, INC., et al.

                    Defendant

------------------------------------------------------------ X

      This matter was tried in open Court over many days.

      The Plaintiff, INTERCOUNTY SUPPLY, INC. (hereinafter, INTERCOUNTY), sued TAP PLUMBING & HEATING, INC. (hereinafter TAP), FLINTLOCK CONSTRUCTION SERVICES, LLC (hereinafter, FLINTLOCK), FLINTLOCK CONSTRUCTION MANAGEMENT, INC., (hereinafter FLINTLOCK II), PURCHASE COLLEGE FOUNDATION HOUSING CORPORATION (hereinafter PURCHASE) and UNITED STATES FIDELITY & GUARANTY COMPANY (hereinafter USF&G).

      INTERCOUNTY supplied plumbing and heating, ventilation and air conditioning supplies, etc. for a project to construct thirteen student dormitory buildings at SUNY-Purchase originally authorized by Purchase. TAP was one of the subcontractors on the job, and FLINTLOCK was the prime contractor. INTERCOUNTY had three causes of action:

    1. To foreclose on a public improvement lien in the sum of $79,072.54 with interest from March 10, 2003.
    2. For unjust enrichment.
    3. For Judgment against USF&G as the surety on the bond for the job.

      TAP, another subcontractor on the job, cross claimed against all of the Defendants and alleged that there was due and owing to TAP the sum of $249,277.22 with interest from March 10, 2003 and its causes of action are:

    1. To foreclose on the lien filed.
    2. For unjust enrichment.
    3. For Judgment against FLINTLOCK and FLINTLOCK II for work, labor and services and materials furnished in the sum of $249,277.22 with interest from March 10, 2003.

P.3                          2039844821              oɔɐuoW ·Ⅎ pɹɐɥɔᴉꓤ    Wᖚ�M7ᘓ 2007 ᘔ17 qǝℲ

FLINTLOCK II's answer has affirmative defenses which, in essence, deny TAP's claims.

FLINTLOCK's answer also contains affirmative defenses and cross claims against TAP:

1. For additional costs incurred by FLINTLOCK due to TAP's not adhering to time schedules in the sum of $250,000.00.
2. For additional damages in the sum of One Million Dollars.

USF&G has asserted seven affirmative defenses which, in essence, denies the right of TAP to collect any monies.

PURCHASE's answer admits entering into a contract with FLINTLOCK but not with TAP. Its answer essentially alleges that it does not have any liabilities herein.

Re: INTERCOUNTY: It was admitted by FLINTLOCK at the trial herein, that INTERCOUNTY had furnished all of the materials required for the job and that they were actually used on the job. No counterclaims were interposed by any of the Defendants against INTERCOUNTY. Further, INTERCOUNTY had, on October 21, 2003, obtained a Judgment against TAP in the sum of $85,772.63 and TAP had already paid on that Judgment the sum of $53,931.74, leaving a balance due of $34,840.89.

Re: TAP: It was proved at the trial that TAP did do plumbing, heating and sprinkler work on the job which originally was for the sum of One Million Dollars. The letter of intent was forwarded to TAP by FLINTLOCK on September 9, 2002 and was executed by TAP on September 24, 2002. The same, drafted by FLINTLOCK, makes "time of the essence", but there is no other fixed date for the parties to use as a guideline. However, even before TAP was sent the aforesaid letter of intent and on August 29, 2002, FLINTLOCK was advised by the overall supervisor hired by PURCHASE that FLINTLOCK had not commenced work on the underground utilities and the lack of work had become unacceptable. Several witnesses testified essentially that FLINTLOCK was not performing on time in the Spring and early Summer of 2002, long before TAP was retained to do any work on the job. TAP alleged that it could not proceed with work because site work had not been completed by FLINTLOCK. Further, FLINTLOCK sent TAP notices of default but never terminated TAP and FLINTLOCK also hired S&S Fire Suppression Systems to supply materials to the site but it never was paid a balance of over $70,000.00 which precipitated S&S filing in bankruptcy. FLINTLOCK did also have S&S do testing and certified that the installed systems were proper, so that FLINTLOCK could receive payments from PURCHASE. In the Bankruptcy Court for the Southern District of New York, S&S obtained a Judgment against both TAP and FLINTLOCK in the sum of $70,775.00. FLINTLOCK then brought another plumbing company to the site, namely D&T Mechanical, but at the trial the principal of D&T did not have any business records available. TAP is suing for the balance due of $249,277.22 which is detailed:

1. Value of work-in-place in Buildings 1-6 at the time of the     $424,615.34
   unlawful termination

2

|   |   |
|---|---|
| 2. Additional credits due "TAP" as a result of change orders | 41,851.88 |
| 3. Materials contracted for and delivered to the job site | 152,810.00 |
| To be deducted from these amounts are monies paid to INTERCOUNTY and S&S pursuant to the contract by FLINTLOCK to TAP | 370,000.00 |
| Resultant total sum due to TAP as of the date of its wrongful termination | $249,277.22 |

FLINTLOCK alleged and attempted to prove that the lien filed, if truly one for a public improvement, was not properly served on either the Comptroller of the State of New York or with an equivalent financial officer of the public corporation which was not complied with herein. Further, FLINTLOCK asserts that if the liens were on private improvements, they are invalid. Likewise it was alleged that the liens were defective because they failed to name necessary parties.

FLINTLOCK further disputes the fact that TAP claims that the "time of the essence" was not spelled out clearly as to completion dates in the "Letter of Intent". This, it claims, was spelled out in various meetings and schedules between TAP and other interested parties who were on the job. Specifically, that TAP was to complete Phase I by December 1, 2002 and substantially complete work on Phase 2 by March 1, 2003.

FLINTLOCK tried to prove that TAP's claim of not being able to proceed was due to union problems, in that pickets were set out by the labor union in question at the main gates and TAP's people would not cross a picket line, was not correct. As borne out by the testimony, there was another entrance to the premises which was not blocked by pickets and TAP could and eventually did use that other entrance to obtain supplies and continue work.

FLINTLOCK also attempted to prove that even if the modular units were not all timely delivered and put into place, TAP could still have proceeded with the work.

FLINTLOCK also has attempted to prove that D&T Mechanical proved that TAP had performed defective work and thus justified payment to D&T by FLINTLOCK.

FLINTLOCK attempted to prove that while it missed certain milestone deadlines, it was effectively on a recovery schedule. That TAP did not increase its manpower on the job despite its delays and that justified the hiring of D&T. However, TAP's foreman testified that he always had sufficient manpower on the job to do the tasks required, even though no specific number was specified in the Letter of Intent or other documents.

3

FLINTLOCK now claims that it was damaged in the sum of $403,409.49. That in addition, in a separate lawsuit initiated by USF&G against FLINTLOCK, it was settled for the sum of $2,999,200.00 and of that sum, TAP was 30% liable or the sum of $449,880.00, for a total sum due from TAP to FLINTLOCK of $754,289.49.

## FINDINGS OF FACT AND LAW

There was no evidence presented to prove that FLINTLOCK CONSTRUCTION MANAGEMENT INC. (FLINTLOCK II) was liable in this matter. Accordingly, the claims against this defendant are dismissed. The Letters to TAP dated September 9, 2002, November 4, 2002, January 25, 2003, February 4, 2003 (2), February 26, 2003, March 3, 2003 and one to PURCHASE dated February 17, 2003, are all on the stationery of FLINTLOCK CONSTRUCTION SERVICES LLC., and while there may be a relationship between FLINTLOCK and FLINTLOCK II, it was not proved at trial.

Normally, the public improvement lien asserted by both INTERCOUNTY and TAP, even if valid, must be dismissed for failure to properly serve the correct parties as set forth in New York State Lien Law - Section 12. This is a fatal defect - BMC Iron Works v. City of New York, 294 App. Div. 2d, 173; Bradley & Son v. Huber Co., 146 App Div 630, aff'd 210 N.Y. 627.

However, in this matter, USF&G never pleaded lack of jurisdiction by any affirmative defense and now raises the same for the first time at trial. CPLR 3018(b) states, "that party shall plead all matters which if not pleaded would be likely to take the adverse party by surprise--". Under CPLR - Rule 3211 by failing to include a defense of lack of personal jurisdiction in its Answer, the defendant has waived the same - Boulay vs. Olympic Flame, Inc., 165 App. Div. (2d) 191, 565 NYS2d 905. Accordingly, this Court can not now accept USF&G's claim of improper service.

As to USF&G's allegations that all claims that had to be paid were either paid or bonded over, this Court had no direct evidence of USF&G's bond. Without this document, the Court cannot review the obligations thereunder to determine whether these allegations may be upheld. In light of the above, this Court is not empowered to dismiss the claims against USF&G.

Terrence M. Gilbrand, who was counsel to the Defendant, PURCHASE testified that the college was owned by The State of New York and that they entered into a lease with PURCHASE. He stated that PURCHASE then obtained a Bond and this was being paid by PURCHASE from rents that are paid by students renting the premises, but no public funds whatsoever were expended on this project. As Bonds were sold, the money was deposited with the Bond Trustee, namely Bank of New York, which would then turn over the monies to PURCHASE which, in turn, would pay FLINTLOCK.

Mr. Gilbrand said FLINTLOCK had many problems and it was known that FLINTLOCK could not complete the job on time and in addition, there were mechanic's liens filed against the

4

job. PURCHASE held back monies from FLINTLOCK due to the above and eventually PURCHASE sued FLINTLOCK and USF&G for $4,993,446.00 for liquidated damages. FLINTLOCK settled the matter by relinquishing the sums held back by PURCHASE and also paid $1,050,000.00, for a total sum of $2,537,000.00.

The Defendant TAP, by its president and foreman on the job, testified that they did the work as they were able to do so, but were delayed because site work was not completed. This was contested in part by a witness who stated that TAP could have done some of the work at that time. TAP also testified that an alleged payment of $90,000.00 contained a forged signature of TAP''s president, Richard Sanca. This was borne out by a subsequent witness who testified that the signature was different than on prior checks. The testimony of Donald Lombardo, Jr. of D&T Plumbing was neither wholly credible nor persuasive as to certain facts. D&T was called in by FLINTLOCK to work on the job at the same time as TAP and thereafter stayed on the job after TAP was terminated, but it was not clear as to which part of D&T's work was original work, nor which part was replacement work done by TAP, nor which was new work assigned by FLINTLOCK and never part of TAP's work to be done.

FLINTLOCK finally terminated TAP because TAP did not comply with the time of the essence clause in the Letter of Intent. Such termination, if justified, would be proper, - see Conquest Cleaning Corp. v. New York City School Construction Authority, 2 App. Div. 3rd 565, 769 NYS 2d 292, Steven Strong Dev. Corp. v. Washington Med Assoc., 303 App. Div. 2d 878; Bilotto v. Weber, 172 App. Div. 2d 639; Windsaver Homes v. Lieberman, 278 App. Div. 2d 411. However, as described herein, the time of the essence clause in the Letter of Intent with TAP was vague and moreover, FLINTLOCK itself was in good part the reason for the job not being completed in time. However, TAP estimated that it completed 70% of their work when they left the job. This Court determines and finds that due to the work still to be completed and work that had to be corrected, TAP only completed 58% of that work when they left the job. This is in addition to additional credits due for change orders and materials contracted for and delivered to the site, which were performed by TAP.

FLINTLOCK was behind in the job schedule before TAP was involved. Further, FLINTLOCK hired people and some times paid them in a different manner from that paid to other subcontractors. FLINTLOCK also did not pay some of the subcontractors so that they could not continue working as evidenced by S&S which did the work and then had to file in bankruptcy. FLINTLOCK sent several notices of termination to TAP but they were never meant to be final and actual notices of termination. They were never really to terminate TAP on the job and so TAP continued working on the job with crews of personnel. These notices sent by FLINTLOCK remind one of the childhood story of the boy who cried "wolf" over and over again so that no one believed him when a real wolf appeared. Not only were these notices meaningless in scope but they were not valid because TAP was still performing. FLINTLOCK was the cause of much of the problems on this job and to now cast the blame on the subs for its actions is disingenuous to say the least. The liquidated damages paid by FLINTLOCK are primarily the fault of its conduct on the job.

FROM :BMB                        FAX NO. :9149466301              Feb. 20 2007 03:41PM P8

FROM :MCGOEYLAW                  FAX NO. :                       Feb. 20 2007 01:41PM P7

FLINTLOCK by its mismanagement of the entire job, even before TAP was hired plus not paying the subcontractors, was the reason for the job not being performed on time. FLINTLOCK, by its president, Stephen Weiss, Jr., testified that FLINTLOCK was penalized and paid $2,537,000.00 and out of this sum, TAP is responsible for 30% of such loss. However, in evaluating the evidence and testimony herein, this Court finds and determines that the losses incurred by FLINTLOCK were caused solely by FLINTLOCK and were not due to any fault on the part of TAP as set forth herein. There is no solid evidence to prove that TAP should be held responsible for any part of the damages paid to USF&G by FLINTLOCK.

Allegedly, USF&G issued a bond which was to secure payment upon the recovery of a Judgment in an action to enforce a mechanic's lien. If this had not been the case herein by either INTERCOUNTY or TAP, the liens would ordinarily be dismissed. See In the Matter of BAT-JAC Contracting Inc. v. Italia Construction Company, 262 App. Div. 2d 314, 693 NYS 2d 603; Harley v. Plant, 210 N.Y. 405; Berger Mfg. Co. v. City of New York, 206 N.Y. 24. However, as stated herein, this Court has not been shown a copy of the bond issued by USF&G and both INTERCOUNTY and TAP did provide merchandise and did valid work at the site.

The decision and findings of this Court are that both INTERCOUNTY and TAP each are granted foreclosure on the various liens filed and will recover for unjust enrichment as follows:

Judgment in favor of INTERCOUNTY SUPPLY INC. against TAP PLUMBING & HEATING INC., FLINTLOCK CONSTRUCTION SERVICES, LLC, PURCHASE COLLEGE FOUNDATION HOUSING CORPORATION and UNITED STATES FIDELITY & GUARANTY COMPANY in the sum of $34,840.89 with interest from March 10, 2003 with the usual costs and disbursements.

Judgment in favor of TAP PLUMBING & HEATING, INC. against FLINTLOCK CONSTRUCTION SERVICES LLC, PURCHASE COLLEGE FOUNDATION HOUSING CORPORATION and UNITED STATES FIDELITY & GUARANTY COMPANY as follows:

1. Value of work in place in buildings 1-6 at termination    $306,357.84
2. Additional credits for change orders                        41,851.88
3. Materials contracted for and delivered to job site         152,810.00
   Less monies paid to INTERCOUNTY and S&S pursuant
   to the contract by FLINTLOCK to TAP                        $370,000.00

Balance due to TAP PLUMBING & HEATING INC.
with interest from March 10, 2003 together with usual
costs and disbursements.                                     $131,019.72

Feb 17 2007 3:26PM    Richard G. Monaco    oonoo    5203844821    p. 8

FROM :BMB                              FAX NO. :9149466301              Feb. 20 2007 03:42PM  P9

FROM :MCGOEYLAW                        FAX NO. :                       Feb. 20 2007 01:41PM  P8

Submit proposed Judgments on Notice of Settlement.

Dated:

February 13, 2007                           _____
White Plains, NY                            Hon. Robert James Friedman


TO:

Richard J. Monaco, Esq.
P.O. Box 116
South Salem, NY  10590

Robert J. McGoey, Esq.
271 North Ave., Suite 1012
New Rochelle, NY  10801

Larry Hollander, Esq.
Hollander & Strauss
40 Cutter Mill Road, Suite 203
Great Neck, NY  11021

7

Feb. 17 2007 3:27PM  Richard G. Monaco                2038944621                P.9